JUDITH ANN TALLEY CURRY, Appellant, v.
ASHLEY JERRY PAUL CURRY, Appellee.
—416 S.W.(2d) 372.

Middle Section. January 16, 1967.

Certiorari Denied by Supreme Court May 15, 1967.

Douglas T. Bates, Centerville, for appellant.

W. C. Keaton, Hohenwald, R. R. Haggard, Jr., Waynesboro, for appellee.

SHRIVER, J.   In this case Ashley Jerry Paul Curry sued the defendant, Judith Ann Talley Curry for a divorce in the Circuit Court of Lewis County, Tennessee.

The parties will be referred to as complainant and defendant as they appeared in the Court below.

Defendant filed an answer and cross-bill to which the original complainant filed an answer and the cause came on to be heard in the Circuit Court at Hohenwald, on February 17, 18 and 19, 1966, before the Honorable Wallace J. Smith, Circuit Judge, on oral testimony without the intervention of a jury and resulted in a decree on April 8, 1966, in which the complainant, Ashley Jerry Paul Curry, was awarded an absolute divorce from the defendant on the ground of cruel and inhuman treatment and was also awarded the exclusive custody and control of the two infant daughters of the parties, Susan Lea Curry and Jennifer Kay Curry, ages 4 years and 17 months, respectively. The cross-bill was dismissed.

Judith Ann Curry perfected her appeal to this Court in due course seeking a review of the decree below only with respect to the custody of the two minor daughters of the parties.

We quote from the statement of the case filed by solicitor for the appellant, defendant below, under Rule 11 of this Court:

"The points raised by this appeal are: (1) Whether or not it is for the best interest of these little girls of tender years to be taken away from their mother who is taking care of them in the home of her father and

mother, in as much as there is no evidence in the record of Appellant being an unfit mother, and all of the evidence in the record is to the effect that the home of Appellant's father and mother is a fit, proper and suitable home for the children. (2) Whether or not the Trial Court was correct in holding in its 'Finding of Facts and Opinion' that the father had a primary right to his children as against the mother. (3) Whether or not conduct on the part of the Appellant which afforded Appellee grounds for divorce was sufficient to justify the Trial Court in depriving Appellant the custody of her two children of tender years, or depriving the two little girls of their mother.''

After hearing the case the Trial Judge took it under advisement and in April 1966, filed an extensive Finding of Facts and Opinion from which the final decree was drawn.

From the Finding of Facts and Opinion of the Trial Judge and from the record the following pertinent facts appear; The defendant, Judith Ann Curry, was born March 30, 1944, while the complainant was born March 3, 1941. They were married in Florence, Alabama on May 9, 1959, when Judith Ann was 15 years of age and complainant was 18 years of age. They married the day after school was out, the complainant having just graduated from High School while the defendant had just finished her first year of High School.

After the marriage they went to Nashville where the complainant obtained work with an ice cream company driving a vending truck. When the ice cream season was over they returned to Hohenwald and lived alternately with their respective parents.

After the defendant became 17 years of age she went to work for the Henry L. Siegel Company in Hohenwald and has worked there continuously except for periods before her two children were born. From the time of the marriage to the time of their separation on October 7, 1965, defendant made a practice of placing her earnings to the account of the complainant, who spent the money pretty much as he pleased. He owned three different automobiles during the time of the marriage. The two children of the union are Susan Lea Curry born May 9, 1962, and Jennifer Kay Curry born November 19, 1964.

During the time that defendant was working the children were placed in the care of baby sitters approved by both complainant and defendant and it is to be observed that during the entire married life of these parties the complainant was not critical of the defendant's treatment of the children or her conduct toward them and until the time their marital difficulties arose in September 1965, there was no criticism of the defendant's conduct either as a wife or mother.

Complainant also worked at Siegel's for about five and one-half years until July 2, 1965, when he went to another job at first with the Railroad Company and then with the Hohenwald Truck Line where he has continued to work.

The first marital difficulty appears to have arisen during the Lewis County Fair in late August, 1965, when the complainant went to Siegels to pick up the defendant at about 4:00 o'clock one afternoon and when she did not come out of the plant promptly he went inside and found her in conversation with another employee, one George Curtis. Subsequently, when questioned about George Curtis the defendant told complainant that he had been

"making passes at her." This situation gathered momentum until the relations between complainant and defendant became strained and defendant insists that the complainant began accusing her of infidelity and tried to make her admit it.

Finally on October 7, 1965, defendant left complainant taking her children with her to the home of her mother and father. She insists that the complainant would not talk to her about their problem but continued to accuse her of infidelity and insisted that she should admit it. Finally, she told him that he would either "get off her back" or she was through and would leave because she could not take any more.

From the proof it appears that on a Sunday in November of that year, after the separation, defendant was seen with George Curtis in an automobile with her two children by Mrs. Monette King and, later on a Saturday, she saw them again together, these occasions being about 2:00 or 3:00 o'clock in the afternoon. Mrs. Peggy Hickerson testified that she saw the defendant in a car with George Curtis once or twice, while Mrs. Ethel Fielder, employee of Henry I. Siegel Company, stated that she had seen defendant with George Curtis at the plant on a number of occasions during the daytime, usually at the noon hour.

There is testimony of more than one witness to the effect that, after the separation, defendant was seen at the 43 Club on Rockdale Hill on more than one occasion where she danced with George Curtis. Mrs. Trull, an aunt of complainant, testified that she saw defendant and George Curtis at 7-Springs Cafe on Highway 100 in Hickman County near the Perry County line on a Sunday afternoon the later part of October or the first of November, 1965.

There was other testimony by other witnesses that defendant was seen with George Curtis at other times and places. One employee of the Siegel Company stated that she had seen Judith Curry and George Curtis together and saw him kiss her at the plant near the eating stand at about 8:30 o'clock in the morning. Martha Bates, an employee of Henry I. Seigel Company testified that defendant had told her on one occasion that she and George Curtis were planning to get married. However, defendant denied that she had ever seriously told anyone that she intended to marry George Curtis.

The defendant herself testified that after she and complainant were separated she went to the 43 Club with George Curtis on one occasion and was at the Ponderosa Club on another occasion and was at the Cloverdale Club, but on each of these occasions her children were at home in the care and custody of her father and mother, Mr. and Mrs. Austin Talley. She stated that prior to the time of the separation she had never been out with any other man and had only been away from home occasionally when she was with the complainant or at home with her mother and father.

Testimony was admitted that George Curtis had been convicted numerous times in Lewis County for public drunkenness, for possessing whiskey and on one occasion for driving while intoxicated and on another occasion for reckless driving. Cleve Garrison, a deputy sheriff, testified that on Saturday night, October 20, 1965, he and other officers stopped a car in the vicinity of Merriwether Lewis National Park at which time defendant was perfectly sober but Curtis was drunk and that defendant was driving the car.

There is testimony that on Saturday Night, November 13, 1965, the complainant, along with two other men posted themselves across the highway in front of the trailer which was occupied at that time by the defendant and her two children; that they began watching about 6:30 P.M. and that about 10:30 P.M. a car drove up in front of the trailer and the defendant and George Curtis got out and went inside the trailer. That Curtis came out in about five minutes, moved his car, parking it behind the trailer, and then went back in the trailer and stayed the rest of the night, leaving about 7:00 A.M.

This occurred at a time when the defendant for a short while lived in the trailer with the children away from her mother and father. But shortly afterwards she moved back to the home of her mother and father where she had lived since the separation and where she continues to live with the children.

Defendant stated that on the night of November 13, 1965, she did not leave the trailer because the children were both sick; that George Curtis did come by and left his car for her use in the event the children became ill enough that she needed to take them to a doctor during the night. She advised Curtis against this because of the appearance and impression it might create but he insisted and did leave the car there that night and came back for it the next morning.

Defendant's father, Mr. Austin Talley, testified that he was at the trailer as early as 6:30 Sunday morning on the occasion in question and that Curtis was not there and did not leave there around 7:00 A.M. as had been testified to by complainant's witnesses.

Defendant testified that during the last three or four years of their married life she was just existing. That complainant was frequently away from home at night, leaving her with the children. She said she worked all day in the factory, would go home and care for the children and do the necessary washing and ironing and as frequently as three or four nights a week complainant would be away from home playing on an independent baseball team, or playing softball, or attending basketball or football games, or going fishing and other similar activities. She said that before the children came she sometimes went with him on these trips but was not able to do so after the children were born. She testified that the neglect on the part of the complainant and her being completely tied down with the children, having full responsibility for them all the time while he fished, played ball, etc., finally became intolerable.

She states that she plans to stay with her father and mother and keep the children there, that they have been in the home of Mr. and Mrs. Talley since the first of December, 1965. Mrs. Talley testified that she and Mr. Talley are willing for them to stay there indefinitely. Mrs. Talley states that she is able to take care of the children and that they are getting along all right.

Mr. Talley states that he is willing for them to stay at his home indefinitely and is willing and anxious to take care of his daughter, Judith, and her two children as long as is necessary.

The record shows that the Talleys have a three bedroom home in a very substantial neighborhood in Hohenwald, with all modern conveniences, and that it is a suitable place for the children insofar as the surroundings and the

situation of the children and of the parents and grand-parents are concerned.

Complainant himself states that the defendant has been at all times a good and attentive mother to their children and he had no reason to complain or criticize the care of the children, or the care that they were receiving from her and from Mr. and Mrs. Talley.

Mrs. Jo Ann Curry, whose husband is a cousin of complainant, and who has had ample opportunity to observe the quality of care given the children stated that defendant is the best mother that could be found to her knowledge and that she would be willing for defendant to take care of her own children if necessary.

To like effect is the testimony of several other witnesses, including Mrs. Betty James, Mrs. Marion Sloane, Mrs. Ima Harris, Mr. N. C. Plummer, Executive Vice-President of the Hohenwald Bank & Trust Company, and others. Mr. Plummer testified as to the fine reputation and character of Mr. and Mrs. Talley, the mother and father of the defendant, as did several other witnesses.

As to the testimony of the complainant with regard to the children and how he proposed to take care of them, there is very little in the record. He stated that he loved the children and they were as much a part of him as they were of defendant, and that he wanted them. The record shows that he had talked to a Mrs. Maude Brown, a widow 62 years old, who has reared five children, all of whom are married, two of them in Nashville, one of them in Atlanta, one in Illinois and one in Michigan, who owns a tri-plex apartment house in which she lives in Hohenwald. It appears that she has done quite a bit of baby sitting and she testified that the complainant had

discussed renting an apartment from her and using her services as a baby sitter when needed. At the time of the hearing Mrs. Brown had just returned from Illinois where she had visited her children for seven or eight weeks. The only time complainant discussed the question of her baby sitting for him was in November 1965, just after she had returned home from Nashville. She had not told complainant how much she would charge him, nor had she set a price. She had never had occasion to be with the complainant or defendant before they separated, she did not know the two babies of the parties, and did not even known their names.

■ Under all the facts and circumstances shown by this record we are persuaded to believe that the manifest best interest of these two small daughters of the parties, demands that, for the present, they remain in the custody of the mother, Judith Ann Talley Curry, in the home of her mother and father, Mr. and Mrs. Austin Talley. It appears that these children are well cared for, are well adjusted in this home and we think it would be detrimental to them and a serious mistake to move them out of this home away from their mother and to put them in the custody and control of the father and a baby sitter, whether it be Mrs. Maude Brown who has an excellent reputation but who does not even know these children, or someone else now unknown to the Court.

■ While the reasons which actuated the Trial Judge in his findings and decree with respect to the conduct of defendant in keeping company with a man of questionable reputation while still not divorced, though separated from her husband, are understandable, we do not think that the record shows the defendant to be untrustworthy and unsuitable as the custodian of her two infant daughters.

For the reasons stated, the decree of the Trial Judge respecting the custody of the two minor children of the parties is reversed and the custody of the said two children, Susan Lea and Jennifer Kay Curry, is awarded to the defendant and cross-complainant below, Judith Ann Talley Curry, and the cause is remanded to the Trial Court for such future orders and decrees respecting the custody of these two children as may be necessary and proper for their welfare and protection upon a showing of a change in conditions and circumstances respecting them; and for the further purpose of having the Court fix a suitable amount to be paid by the complainant, Ashley Jerry Paul Curry, for the support and maintenance of said two children; and for the fixing of such attorney's fees for defendant's counsel as may be necessary and proper.

Reversed and remanded.

Humphreys and Puryear, JJ., concur.