IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT KNOXVILLE

FILED

April 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

TAMMY RUSHING GREENE,

    Plaintiff-Appellant,

Vs.

Monroe Circuit #6455
C.A. No. 03A01-9503-CV-00091

BRYAN LYNN GREENE,

    Defendant-Appellee.

_____

FROM THE MONROE COUNTY CIRCUIT COURT

THE HONORABLE JAMES C. WITT, JUDGE

John W. Cleveland, Cleveland & Cleveland
of Sweetwart, for Appellant

William A. Buckley, Jr., of Athens
For Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE,W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This is a child custody case. Bryan L. Greene (Father) and Tammy Rushing Greene, now

Harris (Mother), were divorced by decree entered June 2, 1988. The decree incorporated a prior

Marital Dissolution Agreement, which granted custody of the parties' minor child, Sara Ann

Greene, to Mother, with liberal visitation rights to Father. On September 15, 1994, Father filed a petition seeking custody, alleging a material change in circumstances. After an evidentiary hearing on March 10, 1995, the trial court granted Father's Petition for Change of Custody. [1] Mother has appealed, and the only issue is whether the trial court erred in ordering a change of custody.

Sara Ann Greene was born in August of 1986. Since the time of the parties' separation in April of 1987, Sara has resided with Mother or with Mother's parents. Prior to the present proceeding, Father exercised his visitation rights approximately 50% of the time and generally paid child support payments in a timely fashion. There was testimony at trial that Sara has a good relationship with both parents.

Sara's current teacher at Sweetwater Elementary School, Cleo Davis, testified that Sara is a good, well-behaved student who shows continued, steady growth in her school work. She testified that Sara is like "any other third-grader." However, there was evidence that Sara had been absent from school frequently, missing 32 of 180 days in the second grade. Mother testified that Sara's absences were generally caused by colds, and she also missed ten days of school because of chicken pox.

Dr. Tom Hanaway, a clinical psychologist who performs forensic evaluations for courts in custody matters, met with Sara twice. He also met with Sara's mother, father, maternal grandmother, and talked to two of Sara's school teachers. He testified that Sara is very bonded to her mother, and that she expressed a strong desire to continue living with Mother. Dr. Hanaway found Sara to be a bright, well-adjusted child who did not exhibit signs of psychological problems.

Father is a 29 year old resident of Kingsport, Tennessee. He works part-time for Wells Fargo and part-time on his family's farm. Father admitted on cross-examination that he has had numerous jobs since the parties' divorce. Although Father receives no compensation for working on the farm, he lives in his parents' home, has his meals there, and receives some financial support from the elder Greenes. Father testified that if he is awarded custody, he will continue

---

[1]This Court granted Mother's Motion for Stay Pending Appeal, pursuant to T.R.A.P. 7.

to live with his parents in this four bedroom home. Mrs. Greene will take care of Sara when Father is at work.

As evidence of changed circumstances affecting Sara's welfare, Father asserts that Mother has changed her residence approximately five times since the parties' 1988 divorce. Father testified that Mother has had several boyfriends. There was evidence that at least one boyfriend, Tony Harris, whom Mother later married, lived with Mother and Sara outside of wedlock. Both Mother's second and third marriages failed.[2] Father admitted that Sara had adequate housing and food. Although Father has never met or talked with Sara's teachers, he stated that her education was neglected during the first and second grades.

Trina Johnson, Mother's first cousin, testified on behalf of Father. She testified that Mother lived with David Thompson, whom Mother did not marry, in 1988, and that Father was aware of this living situation. (Mother denied living with Thompson.) Trina also stated that, during the period Mother was involved with Thompson, Trina saw Mother and Thompson at a convenience store, without Sara. Trina, concerned about Sara's welfare, immediately went to Mother's apartment. Trina testified that she heard crying inside the apartment, but that no one came to the door when she knocked. Trina waited at the apartment, hidden, until Mother and Thompson returned, approximately thirty minutes later. Trina also testified that on one occasion in 1992, when she went to Mother's house, at Mother's request, to pick up Sara, she noted that the apartment was a mess and there was no food in the house. Trina also testified that when Mother moved out of a house owned by Mother and Trina's great-grandmother, Dovie Rushing, Mother left the house in complete disarray. This testimony was contradicted by Jane Moser, Sara's maternal grandmother.

Dovie Rushing, Mother's grandmother, also testified on Father's behalf. Mrs. Rushing, who lives in Sweetwater, has a close relationship with Sara and has kept her frequently since Sara was a small child. She testified that although Sara always had adequate food, clothing, and

---

[2]Mother's third marriage, to Neil Turner, took place on February 1, 1994. The ceremony was performed by Fay Tennyson, a former County Commissioner. Mother testified that she believed she was married, but later discovered that the marriage certificate had not been returned to the county clerk's office, shedding doubt on the validity of the marriage. Regardless, Mother ended her relationship with Turner prior to her discovery that the marriage might not be valid.

housing, Mother was a "poor housekeeper" and had not given Sara "the best of care."

Mr. Robert Greene, Sara's paternal grandfather, testified on behalf on his son. He testified that Sara would be welcome in his home in Kingsport. He also stated that he did not harbor any bad feelings against Mother.

Mother testified that a change of custody would not be in Sara's best interest. However, she testified that she has always encouraged, and continues to encourage, her daughter's relationship with Father. After the parties' divorce, Mother lived in public housing for two years. Mother and Sara then moved to a house owned by one of Mother's aunts in Athens, where they lived for one year. Mother testified that she and Sara moved to Athens because Mother was unhappy with Sara's school in Sweetwater, which was experimenting with a "non-traditional" classroom. Mother and Sara next moved to Knoxville in order for Mother to attend the University of Tennessee. Mother and Sara lived there for one semester, but returned to Mother's parent's home in Sweetwater because Mother had to undergo major surgery. After Mother recuperated, Mother and Sara moved to a house in Sweetwater owned by Mother's grandmother. After leaving that house, Mother and Sara lived in an apartment in Sweetwater, near Mother's parents' home. When Mother married Turner in spring of 1994, they moved briefly to Tellico (however, Sara continued to attend school in Sweetwater). At the time of trial, Mother and Sara were living with Mother's parents in Sweetwater.

Questions regarding custody first arose in May of 1994, when Mother checked herself into a psychiatric hospital in Chattanooga. Mother, who suffers from chronic depression, felt that it would be in the best interest of Sara and Katie, a daughter from Mother's marriage to Tony Harris, to spend time with their respective fathers while she recovered. Mother contacted Sara's father and Kate's father to suggest a joint custody arrangement. Kate's father, Harris, agreed to joint custody; Sara's father demanded sole custody, which Mother refused to grant. In September of 1994, Mother checked herself into a psychiatric hospital in Knoxville. Currently, Mother meets with a counselor every two weeks. She testified without contradiction that her medication for depression has stabilized and she is doing well. She feels that she is capable, with the assistance of her extended family when needed, of providing for all of Sara's needs.

Jane Moser testified on behalf of her daughter. Mrs. Moser keeps Sara frequently. Mrs.

Moser stated that Mother is a very good housekeeper. Mrs. Moser corroborated Mother's testimony that Mother never lived with Thompson. Mrs. Moser stated that she had never noticed that Mother's problems with depression affected either of Mother's children, and it is her observation Mrs. Moser stated that Mother is a loving parent who has always provided adequately for Sara.

At the close of all the testimony, the trial court stated from the bench:

> It looks to me like that there's two groups of family members, some up in Kingsport and some down here around Sweetwater, generally speaking. And there are-- both families love this little girl . . . . And for the most part both families have been respectful people.
>
> But I don't believe that the actions of the mama have been particularly conducive to the raising of the child. Now, there was some proof . . . about her living with a man or two. I think that I heard proof that she lived with Turner several months before they were married . . . If she wasn't living with him, it was awfully close to it.
>
> \* \* \* \*
> And I'm going to rule, and it is my ruling, that the defendant, that would be the petitioner I guess, Greene, will have custody of the child.
>
> Now, you all, I think--and it's also my ruling that this lady will have liberal visitation rights. But I don't think she ought to be around that child at times when she's experiencing these deep depressions. You know, that's not conducive to raising of the child, is to be in the depression part of the time. And it's not conducive to raising the child to live with somebody or --before you marry them.
>
> \* \* \* \*
> What I am trying to look at is 10 years from now or 20 years form now, which one, looking back, would have most likely give [sic] this girl a college education, a profession, the opportunity to meet and marry first-class people that would be good for her and good for her future family and so forth.

Our review of the findings of fact of the lower court is de novo upon the record, accompanied by a presumption of the correctness of the trial court's findings. Unless we find that the evidence preponderates against these findings, we must affirm, absent error of law. T.R.A.P. 13(d); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990).

The doctrine of res judicata bars a second suit between the same parties on the same cause of action with respect to all issues which were or which could have been litigated in the

5

former suit. *Wall v. Wall*, 907 S.W.2d 829, 832 (Tenn. App. 1995). Thus, a custody order cannot be changed absent a showing of new facts, or "changed circumstances," which require an alteration of the original custody award. *Woodard v. Woodard*, 783 S.W.2d 188, 189 (Tenn. App. 1989).

Child custody cases present primarily factual, not legal questions. *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). Although there are no hard and fast rules as to what constitutes "changed circumstances," *Arnold v. Arnold*, 774 S.W.2d 613, 618 (Tenn. App. 1989), it is well settled that the best interest of the child is the paramount consideration in a child custody case. *Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. App. 1991). The party seeking a change in custody has the burden of proving by the preponderance of the evidence that a change in custody is in the child's best interest. *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). In considering whether or not changed circumstances exist, we find the statement of the *Wall* court instructive:

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child.

*Id*. 907 S.W.2d at 834.

In the instant case, we cannot agree with the lower court's determination that there has been a change in circumstances which warrants changing Sara Greene's custody. While there was evidence that Mother has moved frequently and has been involved in several unsuccessful relationships, neither a parent's remarriage nor a parent's sexual indiscretion are, per se, grounds for a change in custody. *See, e.g. Mimms v. Mimms*, 780 S.W.2d 739, 745 (Tenn. App. 1989); *Arnold*, 774 S.W.2d at 618; *Curry v. Curry*, 416 S.W.2d 372, 377 (Tenn. App. 1967). There was no evidence that Sara has been harmed either by Mother's moves or by Mother's romantic involvements. Additionally, there is no evidence that Mother's experiences with depression

6

have had a negative effect on Sara's welfare. Mother testified at trial, without contradiction, that her depression is under control through medication and counseling. Both Sara's teacher and Dr. Hanaway testified that Sara was a well-adjusted child who exhibited no behavioral problems. Neither Father nor any of the witnesses who testified on his behalf stated that Sara lacked food, shelter, or clothing. Although both Mother and Father have good relationships with Sara, neither relationship is flawless.[3] However, Sara has been in her mother's custody for her entire life. Sara expressed a desire to both the lower court and to Dr. Hanaway to remain in her mother's custody. While the preference of an eight year old child is not binding upon this Court, it is a factor which we may consider. T.C.A. § 36-6-102(b) (Michie 1991). Absent a threat to Sara's welfare, we find her close relationship with Mother and Mother's extended family in Sweetwater to be significant. In **Contreras**, this Court emphasized the importance of stability in a child's life:

> The stability provided by the continuation of a successful relationship with a parent who has been in day to day contact with a child generally far outweighs any alleged advantage which might accrue to the child as a result of custodial change. In short, when all goes well with children, stability, not change, is in their best interests.

*Id*., 831 S.W.2d at 290.

Our review of the record reveals no change in circumstances which threatens to cause substantial harm to Sara's welfare. Accordingly, the judgment of the trial court is reversed, and the case is remanded for such further proceedings as are necessary. Costs on appeal are taxed to the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____

[3] This Court does not look lightly upon the fact that Father violated the trial court's original custody order by refusing to return Sara to her mother's custody at the end of a scheduled visit which began September 16, 1994. Although Mother's actions have not always reflected good judgment, this action on the part of Father shows a clear lack of responsibility.

_____

**DAVID R. FARMER, JUDGE**