# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 16, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

GREGORY GEIGER, )
)
    Plaintiff/Appellant, ) Montgomery Chancery
) No. 91-68-159
VS. )
) Appeal No.
DAWN GEIGER BOYLE, ) 01A01-9809-CH-00467
)
    Defendant/Appellee. )

APPEAL FROM THE CHANCERY COURT FOR MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE CAROL A. CATALANO, JUDGE

For the Plaintiff/Appellant:

Christine Zellar Church
Clarksville, Tennessee

For the Defendant/Appellee:

Mart G. Fendley
Clarksville, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal presents a custody and visitation dispute arising from a failed joint custody arrangement. The mother filed her third petition for sole custody of the parties' only child five years after the Chancery Court for Montgomery County approved a martial dissolution agreement establishing joint custody with the father having primary physical custody. Following a bench trial, the trial court awarded the mother sole custody of the child and made provisions for the father's child support and visitation. The father asserts on this appeal that the evidence does not support the trial court's decision. Based on our independent review of the record, we cannot say that the judgment lacks an adequate evidentiary foundation. Accordingly, we affirm the judgment granting sole custody to the mother.

## I.

Gregory Geiger and Dawn Geiger (now Dawn Boyle) married in May 1984 and made their home in Clarksville. At that time, Ms. Boyle was an officer on active duty with the United States Army, and Mr. Geiger was employed with the United States Army Reserve in Nashville. Their only child, Caty, was born on February 21, 1988. The marriage foundered, and the parties were divorced by the Chancery Court for Montgomery County in February 1992. The trial court adopted the parties' marital dissolution agreement which provided that they would have joint custody of their daughter and that Mr. Geiger would have primary physical custody. Ms. Boyle received liberal visitation rights. Shortly after the divorce, Mr. Geiger moved to Nashville to be closer to his work.

In February 1993, Ms. Boyle left the Army married an officer on active duty with the Army. Also in early 1993, Caty was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). Her symptoms included difficulty concentrating or sitting still, disobedience, impulsiveness, violent behavior and temper tantrums, crying easily, and difficulty making friends. In May 1993, Ms. Boyle filed her first petition for a change of custody. The trial court denied the motion six months later in November 1993. Thereafter, Ms. Boyle and her husband moved first to Virginia

and then to West Point, New York. These moves caused Ms. Boyle to spend less and less time with Caty.

Ms. Boyle gave birth to her second child in July 1994. Four months later, in November 1994, she filed her second petition seeking sole custody of Caty. The trial court again denied Ms. Boyle's petition at the conclusion of a hearing in May 1995.[1] Mr. Geiger married Lisa Geiger in December 1995. In May 1997, following the retirement of the trial judge who had presided over the case since its inception, Ms. Boyle filed her third petition seeking sole custody of Caty.

The hearing in May 1998 was acrimonious. Ms. Boyle accused Mr. Geiger of frustrating and interfering with her communications with Caty and of making significant changes regarding Caty's schooling and treatment for ADHD without consulting her. She also complained about incidents in which Mr. Geiger used cold showers to discipline Caty or put his hands over her mouth to prevent her from screaming. Mr. Geiger responded that he had given Caty cold showers twice at her psychologist's request and asserted that Ms. Boyle and her husband used corporal punishment and humiliation to discipline Caty. Lisa Geiger, who was then in the midst of a bitter divorce proceeding with Mr. Geiger, testified on Ms. Boyle's behalf about the physical abuse she had received from Mr. Geiger.

The trial court determined that a material change in circumstances had occurred because the parties' joint custody arrangement had become unworkable due to their inability to cooperate with each other. The trial court thereupon gave Ms. Boyle sole custody of Caty and concluded that it would be in the child's best interests to limit Mr. Geiger's visitation.[2] The trial court also directed Mr. Geiger to begin paying child support. Mr. Geiger now appeals from this order.

---

[1] For some reason not apparent in the record, the order denying Ms. Boyle's second custody petition was not entered until February 1, 1996, even though the trial court had denied the petition at the conclusion of the May 1995 hearing.

[2] The trial court determined that Mr. Geiger could have visitation with Caty during spring break, the month of July, and alternatively for Thanksgiving or Christmas.

## II.

Mr. Geiger is pressing a three-prong attack on the trial court's decision. First, he asserts that the trial court erred in terminating the joint custody arrangement because there had been no unforeseen material change in circumstances since the trial court previously denied Ms. Boyle's last petition for change in custody. Second, he asserts that even if there were grounds to terminate the joint custody arrangement, the trial court should have awarded him sole custody. Third, Mr. Geiger contends that he is entitled to more visitation with Caty than the visitation awarded by the trial court.

## A.

Appellate courts are reluctant to second-guess a trial court's custody and visitation decisions because they often hinge on the demeanor and credibility of parents and witnesses during the hearing. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); *D v. K*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995). Accordingly, we review these decisions de novo on the record with a presumption of correctness unless the evidence preponderates otherwise. *See Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Gaskill v. Gaskill*, 936 S.W.2d at 631; *Griffin v. Stone*, 834 S.W.2d 300, 301 (Tenn. Ct. App. 1992).

Courts should devise custody arrangements that promote the child's relationship with both parents and that interfere as little as possible with post-divorce family decision-making. *See Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993); *Varley v. Varley*, 934 S.W.2d 659, 668 (Tenn. Ct. App. 1996). These decisions are not made to reward or punish parents. *See Sutherland v. Sutherland*, 831 S.W.2d 283, 286 (Tenn. Ct. App. 1991); *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991). Thus, the parents' interests are secondary to those of the children. *See Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992); *Griffin v. Stone*, 834 S.W.2d at 302.

Courts recognize children's need for continuity in their relationships with family and friends. *See Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993); *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991). To protect against unnecessary upheaval, custody and visitation decisions, once made and implemented, are res judicata upon facts existing, or reasonably foreseeable when the decision was made. *See Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *In re Parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995).

However, courts must modify a custody arrangement if the party seeking modification proves (1) that the child's circumstances have materially changed in a way that was not reasonably foreseeable at the time of the original custody decision, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *McDaniel v. McDaniel*, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987), and (2) that changing the existing custody arrangement will serve the child's best interests. *See Seessel v. Seessel*, 748 S.W.2d 422, 429 (Tenn. 1988); *Hall v. Hall*, No. 01A01-9310-PB-00465, 1995 WL 316255, at * 2 (Tenn. Ct. App. May 25, 1995) (No Tenn. R. App. P. 11 application filed).

## B.

We turn first to Mr. Geiger's assertion that there have been no unforeseen material changes in the parties' and the child's circumstances since the previous custody decision. There are no hard and fast rules for determining what constitutes a material change in circumstances. *See Taylor v. Taylor*, 849 S.W.2d at 327; *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983). As a general matter, the change must involve the occurrence of facts or circumstances after the entry of the order sought to be modified, *see Turner v. Turner*, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988), that were not known or anticipated at the time and that affect the child's well-being in a material way. *See Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993); *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981).

The success or failure of joint custody arrangements normally depends on the parents' continuing ability to cooperate with each other, *see Jones v. Jones*, No. 01A01-9601-CV-00038, 1996 WL 512030, at *5 (Tenn. Ct. App. Sept. 11, 1996) (No Tenn. R. App. P. 11 application filed); *Dix v. Carson*, No. 02A01-9704-CV-00093, 1998 WL 886555, at *11 (Tenn. Ct. App. Dec. 17, 1998) *perm. app. denied* (Tenn.

June 21, 1999), and these arrangements often flounder when the parties are no longer able to cooperate. S*ee Gray v. Gray*, 885 S.W.2d 353, 355 (Tenn. Ct. App. 1994), *Malone v. Malone*, 842 S.W.2d 621, 623 (Tenn. Ct. App. 1992), *Dodd v. Dodd*, 737 S.W.2d 286, 289-90 (Tenn. Ct. App. 1987). The fact that a once satisfactory joint custody arrangement has become unworkable can constitute a material change of circumstances sufficient to reopen the issue of custody. *See Rubin v. Kirshner*, 948 S.W.2d 742, 745-46 (Tenn. Ct. App. 1997); *Dalton v. Dalton*, 858 S.W.2d at 326; *Gilliam v. Jones*, No. 01A01-9801-CH-00031, 1998 WL 888931, at *2 (Tenn. Ct. App. Dec. 22, 1998) (No Tenn. R. App. P. 11 application filed); *Cheek v. Cheek*, No. 03A01-9503-CV-00092, 1995 WL 507793, at *2 (Tenn. Ct. App. Aug. 29, 1995) *perm. app. denied* (Tenn. Jan. 8, 1996). The fact that another trial court had previously declined to set aside a joint custody arrangement does not foreclose a trial court from later addressing the same issue based on different facts arising in the meantime.

As with any change in material circumstances, the unworkability of a joint custody arrangement must directly implicate the child's welfare. It is not enough that the parents begin to like each other less because of the passage of time or because they enter into new personal relationships. The party seeking to replace the joint custody arrangement with another form of custody must show that the breakdown in the parents' relations is affecting the child. For example, one parent may be interfering with the child's relationship with the other parent or may be making significant decisions involving the child without consulting the other parent.

Mr. Geiger did not seriously dispute Ms. Boyle's assertion that the joint custody arrangement, as the parties originally envisioned it, was no longer working. The evidence shows that, since the entry of the order denying Ms. Boyle's second custody petition, the parties have not cooperated to promote Caty's welfare. Mr. Geiger failed to return messages left by Ms. Boyle when she was trying to reach Caty, monitored or tape recorded Ms. Boyle's telephone conversations with Caty, and, according to Ms. Boyle, intercepted and censored her mail to Caty. In addition, Mr. Geiger made significant decisions regarding Caty without consulting Ms. Boyle, such as changing or discontinuing Caty's ADHD medications, discontinuing her counseling sessions, and changing her school. In addition, Mr. Geiger asserted that Ms. Boyle refused to cooperate in arranging convenient visitation.

The trial court weighed this testimony, as well as the testimony of the other witnesses, and concluded that the joint custody arrangement was no longer workable. The evidence does not preponderate against this conclusion, and accordingly we affirm the trial court's decision to reconsider the joint custody arrangement.

## C.

Anticipating that we would affirm the trial court's finding of a material change in circumstances, Mr. Geiger next argues that he is comparatively more fit to have custody of Caty and, therefore, that the trial court erred by failing to award him sole custody. We have determined that the evidence supports the trial court's decision to award custody to Ms. Boyle, even though Mr. Geiger has had primary physical custody of the child since 1992.

Once a court finds that there has been a material change in circumstances, it must decide whether changing the existing custody arrangement is in the child's best interests. This determination is factually driven and requires the court to carefully weigh many considerations. *See Gaskill v. Gaskill*, 936 S.W.2d at 630. These considerations include

> the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983); Tenn. Code Ann. § 36-6-106 (Supp.1998).

Parents competing for custody are human beings with their own unique virtues and vices. *See Gaskill v. Gaskill*, 936 S.W.2d at 630. Accordingly, the courts do not expect a parent to prove that he or she is perfect, *see Bah v. Bah*, 668 S.W.2d at 666; *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. Ct. App. 1973), or that the

other parent is completely unfit. *See Griffin v. Stone*, 834 S.W.2d at 305; *Harris v. Harris*, 832 S.W.2d 352, 353 (Tenn. Ct. App. 1992). Instead, courts analyze the "comparative fitness" of the parents to determine which of the available custodians is comparatively more fit than the other at the time of the hearing. *See In re Parsons*, 914 S.W.2d at 893; *Bah v. Bah*, 668 S.W.2d at 666.

Continuity of placement and stability are important considerations in these cases. *See Taylor v. Taylor*, 849 S.W.2d at 328; *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Contreras v. Ward*, 831 S.W.2d at 290; *McDaniel v. McDaniel*, 743 S.W.2d at 169; National Interdisciplinary Colloquium on Child Custody, *Legal and Mental Health Perspectives on Child Custody Law: A Deskbook for Judges* § 5:1, at 51 (1998). Yet, continuity does not trump all other considerations. Depending on the circumstances, the parent who has been acting as the primary caregiver is not necessarily more fit than the other parent to have permanent custody. *See Gaskill v. Gaskill*, 936 S.W.2d at 630-31.

Raising Caty requires much patience and time because of her ADHD. She will also benefit from increased socialization. The Boyles can provide all three. Ms. Boyle is an available parent who has devoted herself full time to caring for her children. Caty already has a relationship with Ms. Boyle's other two children and spending more time with her siblings may have a socializing effect on Caty. Mr. Geiger's recent bitter divorce from Lisa Geiger has made his home a less stable and less happy environment than in the past.

The trial court found that Mr. Geiger and Ms. Boyle were equally fit parents, and stressed that the custody decision was "not an easy call to make." We agree. The trial court's decision is not a reflection on the parents or on Mr. Geiger's parenting efforts between 1992 and 1998. Rather it is the trial court's effort to serve Caty's best interests. Based on our review of the record, we cannot say that the evidence preponderates against the trial court's finding that, on balance, living with her mother best serves Caty's interests.

The results of our review of the evidentiary foundation of the trial court's opinion is reinforced by the practical recognition that Caty has been living with the Boyles in New York since June 1998. Continuity and stability are important for

children, and even more important for children like Caty who have ADHD. Because her condition can be worsened by additional conflict and change, allowing the custody arrangement that has been in place since June 1998 likewise serves Caty's best interests.

## D.

As a final matter, Mr. Geiger argues that the trial court should have awarded him more visitation with Caty. The trial court awarded Mr. Geiger visitation three times a year. Caty is to see Mr. Geiger during spring break, for one month during the summer, and either at Thanksgiving or at Christmas. Mr. Geiger seeks visitation for the entire summer and more visitation during the Christmas holiday.

The trial court concluded that it was "in the bests interests of the minor child to limit the father's visitation." Even though the trial court did not explain its basis for this finding, we assume that it stemmed from the relationship between Mr. Geiger and Caty as it existed at the time of the May 1998 hearing. This record provides us with no basis to second-guess the trial court's decision based on the facts at hand when the decision was made. However, promoting a healthy relationship between the child and both parents is an important consideration. *See Aaby v. Strange*, 924 S.W.2d at 629; *Taylor v. Taylor*, 849 S.W.2d at 331-32; *Varley v. Varley*, 934 S.W.2d at 668. Now that the new custody and visitation arrangement has been in place for approximately one year, it may be appropriate to revisit the visitation issue to determine whether it would be appropriate to increase Mr. Geiger's visitation. However, we leave these matters to the parties and the trial court.

## III.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Gregory Geiger and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.


_____
WILLIAM B. CAIN, JUDGE