**Madeline Anne ROGERO,
Plaintiff–Appellant,**

v.

**Mark Alan PITT, Defendant–Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 10, 1988.

Peter Alliman, Madisonville and Mildred Cunningham, Knoxville, for plaintiff-appellant.

W. Mitchell Cramer, Knoxville, for defendant-appellee.

## OPINION

HARBISON, Chief Justice.

In this case the mother of two young children sought permission to move with them from Knoxville, Tennessee, to Dayton, Ohio, where she planned to remarry. The father opposed the removal, primarily upon the ground that it would disrupt the joint custody arrangement which the parties had agreed upon when they were divorced in September, 1983.

Both the trial court and the Court of Appeals denied the petition of the mother to remove the children, holding that she would either have to remain in Knoxville in order to continue to be the residential parent or, if she did move, primary custody would be changed and awarded to the father. We respectfully disagree and hold that the mother carried the burden of proof incumbent upon her to show that the removal was in the best interest of the children under all of the circumstances. The cause will be remanded to the trial court to consider and fix periods of visitation if the parties are unable to reach an agreement concerning same.

The facts are essentially undisputed. The parties were married in Columbus, Ohio, on February 15, 1975. The two children were born in 1976 and 1979. The parties were divorced by decree of the Fourth Circuit Court of Knox County, Tennessee, on September 19, 1983.

During the eight and one-half years of their marriage, the parties lived in five states. They moved from Ohio to Illinois, then to California, then to South Carolina. They moved to Tennessee in 1980 and have remained in this state since that time. All of the moves were made in connection with the husband's work. His responsibilities now involve a territory encompassing Tennessee and northwest Georgia. His work

requires him to travel to some extent, but he testified that in the future he should not have to be out of Knoxville more than two days in any given week. The family of the husband lives in Baltimore, Maryland; that of the wife in Dayton, Ohio. The husband is now 38 years of age and the wife 36.

During the years of their marriage, the wife was able to attend school part-time. Since the divorce in 1983 she has completed graduate studies at the University of Tennessee in Knoxville. She wishes to marry a resident of Dayton, Ohio, who lives in the neighborhood of her sister, and not far from her mother and other relatives. The trial judge found the proposed stepfather to be an entirely fit person to have the children in his home. He is the father of four other children, all of whom reside in his home, which is spacious and has ample room for all of the persons involved. Both children of the parties to this case are highly intelligent. They are rated as "gifted" children, and educational facilities in Dayton were shown by evidence to be as good or better for such children as the facilities available in Knoxville. Job opportunities for the wife in Dayton were shown to be more favorable than in Knoxville.

The parties moved to Knoxville only because of the requirements of the husband's occupation. They have no other relatives in that city or in Tennessee. The husband's job situation appears to be stable, and there is no indication in the record that he may be moved again in the future, but the facts are that the family lived in five different states during the first five years of their marriage because of his work.

Both parties appear to be highly intelligent and they are excellent parents. Since the divorce the husband has taken an active interest in the rearing of the children, in their school work and in their outside activities. The divorce was granted on grounds of irreconcilable differences. The husband wished to retain the residence in which the parties were living. The wife and children, therefore, moved out of that home and into another home in a different part of the city of Knoxville.

Both the trial court and the Court of Appeals placed great emphasis upon the fact that when the parties were divorced, their agreement regarding custody of the children was embodied into the final judgment. The decree reflected an agreement by the parties that they should have "joint legal custody of their children." At the time of their divorce, the decree recited that the children "at the present time" were "physically residing with the wife." The parties agreed that physical residence of the children might be changed "in full or in part at any time by mutual agreement of the parties."

The decree recited a further agreement of the parties that the welfare of the children was of paramount importance, and that the parties were reluctant to restrict visitation rights to a rigid schedule. The parties agreed that the children might visit "the non-custodial parent" at any time by agreement of the parties. Decisions concerning the health, education and activities of the children were to be made by the parties "after adequate consultation has occurred between them." The parties agreed that neither would do anything which might estrange the children from the other parent or interfere with the natural and continuing relationship between the children and either parent. The agreement did provide, however, that the parent with whom the children resided "will have day to day jurisdiction of the children; however, all decisions of a substantive nature will be made by conscenses (sic) if time and circumstances reasonable (sic) permit."

Nothing was contained in the agreement concerning the removal of either party from Knoxville or from the state. The husband agreed to pay monthly support, and agreed to deposit the same in the United States mail "with sufficient postage to carry same to its ultimate destination" on or before the 10th day of each month.

Both parties testified that they discussed the subject of removal before entering into the agreement which is reflected in the decree. No separate agreement appears in the record, other than the recitals of the final judgment. The wife testified that the

husband had insisted upon a provision prohibiting removal of the children from the state without mutual consent, but she was not agreeable to such a provision. As previously stated, Tennessee was not the home of the family of either party, and in the eight years between the marriage and the divorce decree the parties had moved numerous times. The husband did not actually deny the wife's testimony but said that he did not remember all of their conversation.

Nothing in the decree purports to restrict either party from moving out of Knoxville or out of state. Both the trial court and the Court of Appeals recognized this fact, but both felt that a removal to Dayton, Ohio, some 300 miles, involved a distance too great to permit continuation of the joint custody arrangement. The trial judge indicated that if the distance were somewhat less, he would approve removal. He recognized that the desire of the wife to remarry was a legitimate reason for removal.

The testimony is clear that the joint custody arrangement between these parties had operated very successfully. It is also clear, however, that the children spent most of their time with their mother, and that she had the responsibility of most of the major decisions concerning their regular activities and their education. The father participated willingly and cooperatively, but necessarily most of his time was consumed with the duties of his occupation.

Joint custody agreements have been utilized in this state for many years, and since 1985 they have been expressly recognized by statute. T.C.A. § 36–6–101(a) provides that in any case involving divorce, annulment, or separate maintenance, the trial judge may, regardless of what other relief is granted,

... award the care, custody and control of such child or children to either of the parties to the suit or to both parties in the instance of joint custody or shared parenting, or to some suitable person, as the welfare and interest of the child or children may demand.... Such decree shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require.

Subsection (d) of the same code section provides:

It is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption in favor of or against the award of custody to such party; provided, however, that in the case of a child of tender years, the gender of the parent may be considered by the court as a factor in determining custody after an examination of the fitness of each party seeking custody.

It is obvious from this statute as well as from the cases on this subject that any agreement or arrangement concerning custody of minor children is subject to change. The joint custody arrangement in this case is no exception. The agreement operated well for some three years before the present proceedings were instituted. Nevertheless, if the husband had been transferred out of Knoxville, if either of the parents had become seriously ill, or if any number of other contingencies had occurred, the arrangement which began in 1983 was subject to change or modification. It was certainly foreseeable that either of the parties might wish to remove from the state, and it was certainly foreseeable that either or both of them might wish to remarry. The fact that they originally agreed to joint custody did not prevent either parent from conducting his or her life in a normal manner. Neither did it tie either of them to any particular locality.

Obviously, any change in the residence of either of the parties necessarily would involve some modification of the day-to-day routine of their family life and of the visits by the children with the non-residential parent, in this case the father. The father sought to have the joint custody arrangement terminated if the mother did leave the state and to have the children placed primarily with him. The duties of his work, however, would require that he hire a housekeeper or some other person to care for the children when he is out of town. The children have been primarily in the

daily care of their mother, and she has been shown to be a fit person in every respect. In our opinion, the evidence clearly shows that the alternative of placing the children with the father would not be in the best interest of the children, and he will simply have to accommodate his visitation schedule to the fact that his former wife plans to remarry and to live in another state. There is nothing in the record to suggest that her conduct is vindictive or that she is in any way deliberately attempting to interfere with his normal and close relationship with his children. The evidence is entirely to the contrary.

■ Cases of this nature necessarily involve deep emotions and present problems to which courts do not have perfect solutions. Further, any arrangements regarding custody of minor children are subject to the continuing control of the court rendering the decree, so long as one of the parties remains in Tennessee.[1] Both parties have shown respect for the courts and have not indicated any unwillingness to abide by judicial decisions. If the arrangement which the wife proposes proves unsatisfactory or not in the best interest of the children, the matter can always be reconsidered. On the present record, however, we are of the opinion that it would be unduly harsh and punitive to the wife to prevent her from remarrying and taking her children with her to what appears to be an entirely fit and suitable home in Dayton, Ohio, where the children will be near their grandmother and other relatives.

There are few legal formulae or invariable principles to guide the courts in decisions of this nature. Such decisions are primarily factual, not legal. Attempts to reduce to legal doctrine the resolution of cases such as this usually have little significance. The best interests of the children under all of the circumstances, which, of course, include their relationships with their parents, must be the concern of the courts.

■ The parties have devoted lengthy portions of their briefs to the question of where the burden of proof lies in cases such as this. Since the case was instituted, however, this Court has rendered its decision in the case of *Seessel v. Seessel,* 748 S.W.2d 422 (Tenn.1988), holding that the party who files a petition such as this has the burden of proof. In this case the mother filed the petition to seek approval of a change in the custody arrangement. The burden of proof rested upon her, therefore, to establish her case by the preponderance of the evidence. This she has done. We decline the request of counsel for the mother to reconsider the *Seessel* case or to overrule it.

Both courts below emphasized the fact that the present case involves joint legal custody rather than sole custody with rights of visitation. While this is true, in fact primary residential custody and care of these children has been with the mother since the date of the divorce. The parties have been cooperative in making major decisions concerning the children, and, in our opinion, that situation can continue even though one of the parents finds it appropriate to move from Knoxville. The husband should continue to have a voice in the care, development, education and welfare of his children, and the wife has testified positively that she will afford him an opportunity to do so. The record shows that he has four weeks of vacation each year plus twelve holidays which he may take. Dayton is about 300 miles from Knoxville. Arrangements for suitable visitation by the children either in Knoxville or in Dayton are not insuperable or indeed unusual in cases of this type.

1. *State ex rel. Cooper v. Hamilton,* 688 S.W.2d 821 (Tenn.1985).

The judgments of the courts below are reversed. Approval is given for the wife to remove these children to Dayton, Ohio, provided that circumstances have not changed in the two years since this case was instituted in the trial court. The cause is remanded to the trial court for further proceedings consistent herewith and with directions to determine proper visitation with the children by their father. Costs incident to the proceedings are taxed to the appellee.

FONES, COOPER, DROWOTA, and O'BRIEN, JJ., concur.