Kimberly Dawn Ward CONTRERAS,
Plaintiff/Appellant,

v.

Phillip Wayne WARD,
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 6, 1991.

Application for Permission to Appeal
Denied by Supreme Court
March 30, 1992.

Mark L. Agee, Harrell, Harrell & Agee, Trenton, for plaintiff/appellant.

Harold F. Johnson, Jackson, Stephen M. Milam, Lexington, for defendant/appellee.

TOMLIN, Presiding Judge (Western Section).

This is a child custody case. The custodial parent filed a petition to remove her child from the jurisdiction. The request for removal resulted when the custodial parent's second husband, the father of her two additional children, was transferred out of the jurisdiction by his employer. Following proceedings in the Chancery Court of Madison County, the chancellor held that in the event plaintiff (hereinafter "Mother"), the custodial parent, changed her place of residence from Henderson County to St. Louis, Missouri in order to reside with Mr. Contreras, her present husband and father of two of her children, this move would constitute a change in circumstances which would justify a change of custody to defendant (hereinafter "Father"). The sole issue presented for our consideration is whether the chancellor erred in holding that if Mother relocated to St. Louis, Missouri in order to be with her husband, the move would constitute a material change of circumstance justifying a change of custody of the parties' minor

child from Mother to Father. We are of the opinion that based upon the case law of this state, the chancellor erred.

The basic facts are for the most part undisputed. The only witness to testify at the hearing below was Mother. The parties were divorced in 1985. Custody of their minor child, Jennifer, then two and a half years of age, was awarded to Mother. At that time and at all times since, Mother has been Jennifer's primary caretaker. Mother remarried and that marriage produced two children, who were ages one and two at the time of the hearing. From the time of Mother's second marriage to Mr. Contreras until his transfer to St. Louis he had worked as an insurance agent in Jackson.

In 1990, Mr. Contreras was promoted by his employer to a managerial position with the company in St. Louis, Missouri. While he moved there in September, 1990, Mother has continued to reside in Henderson County with Jennifer and the two children from her marriage to Mr. Contreras. Mother testified without contradiction that the sole purpose for Mr. Contreras' move was to better the family's position economically, and that the increase in income and opportunity would not have been available to him had he refused the transfer. As a salesman in Jackson, Mr. Contreras was paid a weekly salary of $263.15. In the managerial position in St. Louis, his salary increased to $523.00 per week. Mother further testified that in the event a future promotion or transfer to Nashville or Memphis in the future became available, Mr. Contreras would certainly accept it, as both of them would desire to return to Tennessee.

Mother testified that she and Mr. Contreras investigated the suburban St. Louis neighborhoods as well as a prospective school for Jennifer. Specifically, she stated they had selected an appropriate school for Jennifer, who is an academically gifted child. She stated that if allowed to move to St. Louis, she would continue to be a homemaker, working only two or three nights a week at most selling Tupperware. In addition, Mother testified that Jennifer gets along well with her stepfather and her siblings from Mother's marriage to Mr. Contreras. There was also testimony to the effect that both parties are fit and loving parents, and that Jennifer enjoys loving grandparents and relatives in the Henderson County area. The testimony showed that it is an approximate four and one-half hour drive from Henderson County to St. Louis.

Inasmuch as this case was tried by the court without a jury, our review is *de novo* upon the record with a presumption of correctness of the findings by the trial court. Unless we find that the evidence preponderates against these findings, we must affirm, absent an error of law. Rule 13(d) T.R.A.P.; *Hass v. Knighton*, 676 S.W.2d 554 (Tenn.1984).

Furthermore, in child custody cases, the child's best interest is the paramount consideration. It is the polestar, the alpha and omega. *Bah v. Bah*, 668 S.W.2d 663 (Tenn.App.1983).

In his petition seeking change of custody, Father alleged as grounds the close family ties that exist between Jennifer and her family in west Tennessee. While it was admitted by Mother that Jennifer enjoyed a good relationship with her grandparents and other family in this state, there is no testimony in this record to show that this move would have an adverse effect upon this child. However, we do recognize the adverse effect on the grandparents who would be denied the pleasure of having the child reside continuously in Henderson County.

Certain legal principles pertaining to child custody have become well established in this state. In resolving this dilemma, we look back to the landmark case of *Seessel v. Seessel*, 748 S.W.2d 422 (Tenn.1988), decided by our Supreme Court, which held that the custodial parent desiring to remove a minor child from the jurisdiction had the burden of proving that "the best interest of the child will be better served by its relocation." *Id.* at 424.

As we view this holding, it does not mean that a parent seeking to remove a

child from the state has the burden of proving that the removal of the child from one state to another, in and of itself, will *eo instante* improve the well-being of the child. We must continually be guided by what is in the best interest of that child under the circumstances being considered in any given case. Keeping our focus on the child's welfare, the courts should ask themselves whether considering the totality of circumstances, the child would be better off with the custodial parent in the foreign state or with the non-custodial parent in this state.

We believe this is what the Supreme Court meant in the later case of *Rogero v. Pitt*, 759 S.W.2d 109 (Tenn.1988), when it stated:

> There are few legal formulae or invariable principles to guide the courts in decisions of this nature. Such decisions are primarily factual, not legal. Attempts to reduce to legal doctrine the resolution of cases such as this usually have little significance. The best interests of the children under all of the circumstances, which, of course, include their relationships with their parents, must be the concern of the courts.

*Id.* at 112. It should also be noted that in *Rogero* the Court found that a wife's desire to remarry was a legitimate reason for removal. *Id.* at 111. That being so, certainly a wife, having remarried a Tennessee resident who was subsequently transferred by his employer to another state, would have an even stronger reason for removal when children had been produced by that marriage and wife had a desire to maintain the marriage as an integral family unit.

■ The trial court must conduct a balancing test when faced with a decision such as the one under consideration. This balancing takes into account the rights of the competing parties and the state's interest in seeing to the best interest of the child. Nonetheless, as stated in *Bah, supra*, the best interest and welfare of the child must be the primary focus of attention. Short of an adverse effect on the non-custodial parent's visitation rights or

other aspects of a child's best interests, the custodial parent should enjoy the same freedom of movement as the non-custodial parent.

■ The proof shows that for eight years Jennifer has been under the primary care of Mother. There was proof that she is a well-balanced, intelligent child and that she has been afforded a good home by Mother, while single, and subsequently since married to Mr. Contreras. Commenting upon the importance of stability in the life of a child in a divorce, in *Sartoph v. Sartoph*, 31 Md.App. 58, 354 A.2d 467 (1976), the Maryland Court of Appeals stated:

> The custody of children should not be disturbed unless there is some strong reason affecting the welfare of the child. To justify a change in custody, the change in conditions must have occurred which affects the welfare of the child and not that of the parents. The reason for this rule is that the stability provided by the continuation of a successful relationship with a parent who has been in day to day contact with a child generally far outweighs any alleged advantage which might accrue to the child as a result of custodial change. In short, when all goes well with children, stability, not change, is in their best interests.

*Id.* 354 A.2d at 473.

This Court is of the opinion that it is more important that Jennifer continue to live with her mother and siblings than to deprive her of this close relationship in order to continue to enjoy more frequent contact with her natural father and grandparents here in Tennessee. To deny Mother, as the custodial parent, the right to take this child to live with her, her present husband, and other children in St. Louis, Missouri is not in the child's best interests. In so ruling, the trial court abused its discretion.

We are not unmindful of the fact that the parties will have to structure new and different visitation rights to accommodate this move. Rather than imposing a visitation program upon them at this time, this Court leaves it to the best judgment of the

parents of this child. Alternating visitation rights over the major holidays, such as Thanksgiving and Christmas, as well as other times, along with extended visitation during the summer can yield great benefits both for the child and the parents. We urge the parties to fashion acceptable visitation through mutual cooperation rather than resorting back to the court.

Accordingly, the decree of the chancellor providing for change of custody from Mother to Father in the event Mother seeks to take this child to St. Louis, Missouri is reversed. Custody shall remain in Mother. The relief prayed for by Mother is granted, and she is allowed to remove the parties' minor child to the St. Louis, Missouri area.

This cause is remanded to the Chancery Court of Madison County for resolution of Father's visitation rights with the child. Costs in this cause are taxed to Father, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.