# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**July 29, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

KAREN JEAN (EATHERLY) SMITHSON,       )
                                      )
         Plaintiff/Appellee,          )        Wilson Circuit
                                      )        No. 1074
VS.                                   )
                                      )        Appeal No.
DAVID RAY EATHERLY,                   )        01A01-9806-CV-00314
                                      )
         Defendant/Appellant.         )

## APPEAL FROM THE CIRCUIT COURT FOR WILSON COUNTY
## AT LEBANON, TENNESSEE

## THE HONORABLE BOBBY CAPERS, JUDGE

For Plaintiff/Appellee:                For Defendant/Appellant:

Calvin P. Turner                       Hugh Green
Lebanon, Tennessee                     Lebanon, Tennessee

# VACATED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a custody dispute that continued without final resolution for four years over a seven-year-old child. The Circuit Court for Wilson County did not finally adjudicate the child's custody when it divorced the parties in 1994. During the next four years, the trial court entered a series of temporary custody orders embodying different joint custody arrangements notwithstanding both parents' repeated requests for sole custody. Finally, in 1998, the trial court determined that the child should reside primarily with the mother because the father and his second wife were expecting a child. The father asserts on this appeal that the trial court should have awarded him custody because he is comparatively more fit to be the child's custodian. We have determined that the trial court failed to employ proper procedures or criteria in making its custody decision. Therefore, we vacate the order awarding primary physical custody to the mother and remand the case to the trial court for further proceedings.

## I.

David Ray Eatherly and Karen Jean (Eatherly) Smithson were married in November 1989. After their wedding, they moved from Knox County to Lebanon where Mr. Eatherly worked for a construction company, and Ms. Smithson worked for a bank. Their only child, Kelsy Westyn Eatherly, was born on July 12, 1992. The parties separated six months later.

Ms. Smithson sought sole custody of parties' daughter when she filed suit for divorce in January 1993 in the Circuit Court for Wilson County. Mr. Eatherly responded by denying that Ms. Smithson had grounds for divorce and by asserting that he was entitled to the divorce and to sole custody of the parties' daughter. In March 1993, the trial court entered an order granting custody pendente lite to Ms. Smithson and giving limited visitation to Mr. Eatherly. For the next four months, the parties actually had custody of their daughter for roughly equal amounts of time.

The custody dispute rekindled in July 1993 because of Ms. Smithson's plans to take the child on a visit to Knoxville. Mr. Eatherly believed that the child's respiratory problems were severe enough to keep her at home. When Ms. Smithson

did not agree, Mr. Eatherly filed a petition seeking temporary custody of the child. He asserted that Ms. Smithson was suffering from depression and that she had failed to obtain adequate medical care for the child. The trial court immediately conducted an informal hearing and, after talking with the child's pediatrician by telephone, directed Ms. Smithson not to take the child to Knoxville until the child's health improved. The trial court also modified the temporary custody arrangement to provide that Mr. Eatherly would have custody of the child each week day and that Ms. Smithson would have custody at night. The court also ordered both parents to undergo psychological examinations prior to the trial of the divorce.

The proof regarding custody presented at the December 6, 1993 trial was not to the trial court's liking because Ms. Smithson had not undergone the previously ordered psychological examination. Accordingly, the trial court did not finally resolve the custody question when it entered its "final" divorce decree on January 10, 1994. The trial court declared the parties divorced and directed Ms. Smithson to have a psychological examination by the same persons who had already examined Mr. Eatherly. As a temporary matter, the trial court established a joint custody arrangement wherein Mr. Eatherly had physical custody from Monday morning until Friday afternoon, and Ms. Smithson had physical custody from Friday afternoon until Monday morning.

On June 28, 1994, the trial court entered a "final" custody order based on a March 7, 1994 hearing. The court awarded the parties joint custody of their daughter even though neither party had requested joint custody. It also found that Mr. Eatherly should be the primary custodian of the child. Ms. Smithson received visitation with the child for three weekends each month and every other Wednesday night. For reasons not readily apparent in the record, the trial court did not require Ms. Smithson to pay child support to Mr. Eatherly.

Ms. Smithson filed a petition to modify the custody decree on February 7, 1995. She asserted in the petition that giving her custody was in the child's best interests because she had recently purchased a house where she and the child could live and because the current arrangement had "denied the child the opportunity to

develop a normal mother and daughter relationship." Mr. Eatherly responded to the petition by denying that any material change in circumstances had occurred and asserting that granting him sole custody would be in the child's best interests. The trial court conducted a hearing in June 1995, and on July 31, 1995 entered an order finding that there had been no material change in the child's circumstances but reserving the custody issue "pending further proof."

The trial court conducted another custody hearing on July 2, 1996, and on July 23, 1996 entered another custody order finding that it was in the child's interest to continue the joint custody arrangement. The court also determined that the amount of time the child spent with each parent should be modified because Ms. Smithson was no longer working full-time. Accordingly, the trial court modified the custody schedule to provide that the child would reside with Ms. Smithson from Sunday through Thursday each week and with Mr. Eatherly during the remainder of the week. The July 23, 1996 order also recited that "[a]ll other provisions of the previous orders of the court shall remain in force, pending further orders of this court." Accordingly, the decree did not represent the final custody determination. Instead, the court made clear its intent to continue monitoring the parties and the existing custody arrangement.

Mr. Eatherly remarried sometime after the entry of the July 23, 1996 custody order. On August 5, 1997, two and one-half years after Ms. Smithson filed her petition to modify custody and more than one year after the trial court issued its last order in the matter, the court held another hearing for the purpose of making a final custody determination. At the conclusion of the hearing, the court found that both parents were equally qualified custodians and that the child should remain in joint custody. However, the trial court decided to award primary physical custody to Ms. Smithson because of

> the fact that [Mr. Eatherly's] wife is pregnant and expecting a child. It's going to take some adjustment in their home and I don't know how that's going to work. I don't anticipate any problems but you bring a small child into the home there's going to have to be some adjustments made.

Accordingly, the trial court determined that Ms. Smithson would have primary physical custody of the child and that Mr. Eatherly would have the child for visitation

every weekend except for the third weekend of each month, six weeks during the summer, and on alternate holidays. The trial court also directed Mr. Eatherly to begin paying Ms. Smithson $500 per month in child support. An order embodying these findings and conclusions was entered six months later on February 6, 1998.

## II.

At the outset, the extraordinary delay in obtaining a final custody determination in this case demands comment. The wrangling between the parents over custody began with their separation in January 1993 and has continued through the entry of the February 1998 order. During the intervening five years, the trial court experimented with various custody arrangements apparently intended to accommodate the parties' circumstances at the time. Ms. Smithson's last custody petition went unresolved for three years.

Our child custody decisions recognize a child's ongoing need for continuity and stability. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993); *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991). Accordingly, there is a strong presumption in favor of an original custody award, *see Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993), that will not be overcome without proof (1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision and (2) that the child's interests will be best served by modifying the existing custody arrangement. *See Adelsperger v. Adelsperger*, 970 S.W.2d at 485.

We have also stressed that prompt and final custody decisions are most consistent with a child's need for continuity and stability. In recognition of the inevitable bonding between the child and the custodial parent, *see McDaniel v. McDaniel*, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987), we have cautioned that temporary custody decisions should be avoided unless they are necessary to protect the child or to protect the integrity of the judicial process. *See Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL _____, at *___ (Tenn. Ct. App. July 21, 1999); *King v. King*, No. 01A01-9110-PB-00370, 1992 WL 301303, at *2 (Tenn. Ct. App. Oct. 23, 1992) (No Tenn. R. App. P. 11 application filed).

We find no reason in this record for the three-year delay in resolving Ms. Smithson's petition for change of custody or for the six different custody arrangements the trial court devised between 1993 and 1997. Our role as judges is to shield children, to the greatest extent possible, from the adverse effects of divorce. *See Yeager v. Yeager*, No. 01A01-9502-CV-00029, 1995 WL 422470, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed). Shuttlecocking this young girl between her parents for over four years was simply inconsistent with this role and was contrary to the child's best interests. It also complicates the already difficult task of devising a custody arrangement that will now be in the child's best interests. *See Gorski v. Ragains*, 1999 WL _____, at *___ ; *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at *2-6 (Tenn. Ct. App. Oct. 22, 1997) (No Tenn. R. App. P. 11 application filed); *King v. King*, 1992 WL 301303, *2.

## III.

We now turn to the custody arrangement prescribed in the trial court's February 6, 1998 order. Mr. Eatherly takes issue with this arrangement by asserting that the trial court erred by refusing to grant him sole custody of the parties' daughter. We have determined that the trial court's reasoning upon which this order is based contains two fundamental flaws that require us to vacate the order.

### A.

The first fundamental flaw in the trial court's reasoning relates to its decision to continue the joint custody arrangement. Even though neither party was seeking joint custody, the trial court decided to continue the joint custody arrangement because of its mistaken belief that joint custody was statutorily mandated.[1] At the time of this hearing, joint custody was not statutorily mandated, even when both parties requested it. *See* Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1997) empowered the courts to award custody to both parents using either a joint custody or shared parenting arrangement, and Tenn. Code Ann. § 36-6-101(a)(2) contained a presumption that joint custody was in a child's best interest when the parents have formally agreed to a joint custody arrangement. However, even when both parents

---

[1]Specifically, the trial court observed during the August 5, 1997 hearing that "I'm going to still have a joint custody situation because I think now the law says you need to do that . . .."

requested joint custody, the trial court had the prerogative to fashion another type of custody arrangement if the record contained clear and convincing evidence that joint custody was not in the child's best interest. *See* Tenn. Code Ann. § 36-6-101(a)(2).

Neither Mr. Eatherly nor Ms. Smithson requested joint custody in this case, and they certainly did not formally request joint custody during any of the numerous hearings the trial court conducted. Therefore, the trial court erred when it determined that the statute required a joint custody arrangement in this case. Our finding that the trial court's reason for awarding joint custody was mistaken should not be construed as a determination that joint custody is inappropriate in this case. Even without the joint request of the parties, the trial court may very well determine, after carefully reviewing the factors in Tenn. Code Ann. § 36-6-106 (Supp. 1998), that a joint custody arrangement of some sort is in the child's best interests.

## B.

The second fundamental flaw in the trial court's reasoning was its belief that the fact that Mr. Eatherly's current wife was pregnant was a material change in circumstances that warranted a change of the custody arrangement that existed at the time of the August 1997 hearing. This conclusion is inconsistent with the settled understanding of what constitutes a material change of circumstances in cases of this sort.

Tenn. Code Ann. § 36-6-101(a)(1) empowers the courts to modify existing custody arrangements "as the exigencies of the case may require." While initial custody decisions govern all factual circumstances known to the trial court at the time of their rendering, they do not prevent a court from later modifying a custody arrangement when required by unanticipated facts or subsequently emerging conditions. *See Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *Adelsperger v. Adelsperger*, 970 S.W.2d at 485; *Woodard v. Woodard*, 783 S.W.2d 188, 189 (Tenn. Ct. App. 1989). Thus, a party seeking to alter an existing custody arrangement must show (1) that the child's circumstances have materially changed in a way that could not be reasonably foreseen at the time of the original custody decision and (2) that the child's best interests will be served by changing custody. *See Adelsperger v. Adelsperger*, 970 S.W.2d at 485; *see also Solima v. Solima*, No. 01A01-9701-CH-

-7-

00012, 1998 WL 726629, at *3 (Tenn. Ct. App. Oct. 16, 1998), *perm. app. denied,* (Tenn. Apr. 19, 1999).

Common experience teaches that many divorced persons in contemporary society will decide to marry again and to start a new family. This understanding is borne out by statistics showing that an estimated seventy-five percent of divorced persons marry again[2] and that many of these persons expect to begin a new family either with biological children, step-children, or both.[3] Multiple families or serial family development are now the norm rather than the exception.[4]

Recognizing the prevalence of later marriages, this court has held that a parent's remarriage, without more, is not the sort of change of circumstances that will trigger judicial reconsideration of a custody arrangement. *See Arnold v. Arnold*, 774 S.W.2d 613, 618 (Tenn. Ct. App. 1989). Changes in the custodial home environment brought about by a later marriage may, however, trigger a new comparative fitness analysis if these changes are or may adversely affect the child. *See Tortorich v. Ericson*, 675 S.W.2d 190, 192 (Tenn. Ct. App. 1984). Thus, divorced parents should not be permitted to upset an existing custody arrangement simply because one or both of them have married again or because the custodial parent and his or her new spouse have started a new family. Parents seeking to alter an existing custody arrangement must offer some specific evidence concerning how the later marriage or the birth of new children have or will have an adverse effect on the child before the courts will undertake a new comparative fitness analysis.

Based on the facts in this case, the possibility that Mr. Eatherly and Ms. Smithson would marry again and would begin their second families are developments that the trial court and both parties should reasonably have anticipated in 1994 when the trial court entered its "final" divorce decree and its "final" custody decree. Ms. Smithson did not come forward with evidence of specific facts proving that granting

---

[2] *See Final Report, Evaluation of Child Support Guidelines, Vol. I: Findings and Conclusions* ¶ 1.2.1 (United States Dep't of Health & Human Servs., Admin. for Children & Families, Office of Child Support Enforcement 1996).

[3] *See* Thomas Espenshade, *Marriage Trends in America: Estimates, Implications, and Underlying Causes*, 11 Population & Dev. R. 193 (1985).

[4] *See* Marianne Takas, *Addressing Subsequent Families in Child Support Guidelines* 37, *in* Child Support Guidelines: The Next Generation (Margaret C. Haynes, ed. 1994).

Mr. Eatherly custody would somehow place Kelsy at risk or compromise her best interests. Quite the contrary may very well be the case. Growing up with other siblings is commonplace in America. In fact, in these types of cases, courts generally try to keep siblings together based on the belief that permitting siblings to grow up together is in their best interests. *See Rice v. Rice*, 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998); *Baggett v. Baggett*, 512 S.W.2d 292, 293-94 (Tenn. Ct. App. 1973). Accordingly, Ms. Smithson failed to allege or prove a material change in circumstances warranting a modification of the existing custody arrangement. It also follows that the trial court erred by basing its decision to award Ms. Smithson custody of the parties' daughter on the fact that Mr. Eatherly's current wife was expecting a child.

## C.

Our task with regard to appeals from custody decisions is to review the record de novo and to evaluate the trial court's findings to assess whether the trial court made a proper disposition in light of the statutory and common-law factors. *See Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990); *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992). We have determined that the trial court did not employ the correct methodology in this case because it focused on the attributes of the parents it believed might be harmful to the child rather than on comparing the relative fitness of the parents to be their child's custodian.[5]

The factual record in this case is sparse. The trial court's findings are limited to its assessment of Ms. Smithson's progress with her depression and Mr. Eatherly's decisions to marry again and to start a new family. The trial court appears to have overlooked the fact that Mr. Eatherly was the child's primary custodian for approximately two and one-half years and that the child spent another year being shuttled between her mother and father. Based on the circumstances of this case, we find the evidence preponderates against the conclusion, necessarily implicit in the trial court's February 6, 1998 order, that a material change of circumstance affecting

---

[5]The trial court made specific mention of its perception that Ms. Smithson's depression had "come a long way" over the years and that the impending birth of Mr. Eatherly's child would "take some adjustment."

-9-

the parties' child had occurred since March 1994 that warranted changing primary physical custody from Mr. Eatherly to Ms. Smithson.

In accordance with Tenn. R. App. P. 36(a), we have the authority to fashion new custody arrangements based on the evidence in the record and the application of the relevant legal principles. However, custody determinations involve the consideration of many factors, *see Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988); *Holloway v. Bradley*, 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (1950), and may hinge on subtle nuances in the parties' demeanor and credibility. *See Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Thus, we should not undertake to make a custody determination on appeal in the absence of an adequate factual record.

The factual record in this case is not sufficient to enable us to make a custody decision based on the child's best interests under the current circumstances. We are mindful of the fact that almost two years have passed since the trial court's last hearing and that by now the parties' daughter has established a new home environment that is not reflected in this record. Thus, we have determined that the proper course is to vacate the February 6, 1998 order and remand the case to the trial court with directions to compare the current fitness of Ms. Smithson and Mr. Eatherly to be their daughter's custodian and then to devise the custody arrangement most consistent with her best interests at this time.

## IV.

We vacate the February 6, 1998 custody order and remand this case to the trial court for further proceedings consistent with this opinion. Except as modified by the trial court for good cause, the custody arrangement contained in the February 6, 1998 order shall remain in effect pending the hearing on remand. We tax the costs of this appeal in equal proportions to David Ray Eatherly and his surety and to Karen Jean Smithson for which execution, if necessary, may issue.

—————

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.


_____
PATRICIA J. COTTRELL, JUDGE