**IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE**

**FILED**

**March 23, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**



DUSTIN ROBERT SUNTHEIMER,   )
   )
     Plaintiff/Appellee         )     Appeal No.
   )     M1999-00248-COA-R3-CV
vs.   )
   )
MARIA ESTHER SUNTHEIMER,   )     Rutherford County Chancery
   )     No. 97DR-358
     Defendant/Appellant     )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR RUTHERFORD COUNTY

THE HONORABLE ROBERT CORLEW PRESIDING

DARRELL L. SCARLETT
MURFREESBORO, TENNESSEE

ATTORNEY FOR DEFENDANT/APPELLANT

STEVEN A. STINSON
MURFREESBORO, TENNESSEE

ATTORNEY FOR PLAINTIFF/APPELLEE

**AFFIRMED AND REMANDED**

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P.J.
KOCH, J.

_____

# OPINION

This is an appeal from an award of custody upon the parents' divorce. The trial court awarded sole custody of the minor child to Dustin Robert Suntheimer ("Father") with limited visitation to Maria Esther Suntheimer ("Mother"). We affirm the award of custody to Father.

## I.

The parties married in June 1994. At the birth of the child on November 4, 1996, Mother was living in Miami and Father in Murfreesboro, Tennessee. Father went to Miami for the birth of the child, returned to Tennessee, and went back for the holidays. Mother and the child were supported by Mother's mother, who resides in Colombia.

Mother left the child with a nanny in January 1997 and flew to Colombia for medical treatment. The trip was extended because Mother required surgery. Father flew to Miami to retrieve the child and take him to Mother in Colombia. Father's passport had been confiscated, however, and so he brought the child to Tennessee. Father had Mother served with the divorce complaint and a restraining order while she was in the hospital in Colombia.

Mother moved to Tennessee in May 1997 after her recuperation and sought visitation with her son. She and Father, through their attorneys, worked out an agreed order providing for Mother's supervised visitation with the child. Mother's only reason for being in Tennessee was to be near her son. Even Father's family, while criticizing Mother's parenting skills, admitted that she loved the child. However, she missed some visits and was often late to pick him up. Father became very rigid in his schedule, not allowing Mother to have the child if she was late, even by a minimal amount

2

of time.

Evidence of the parties' mutual antipathy was overwhelming at trial. Each criticized the other's family. Each expressed fears that the other or someone in the family would abscond with the child. Each made threats against the other. Each charged the other with assault.

Both parties admitted to past drug use, and both claimed not to have used any illegal drugs since the birth of the child. Both agreed at trial to submit to drug tests; Father tested negative in both tests, Mother tested positive for cocaine in the hair follicle test, showing past use, although there was no indication how long ago that drug use had occurred. There was testimony that Mother had been seen smoking marijuana and using cocaine while she lived in Murfreesboro.

Mother had moved four times while in Murfreesboro. She babysat on occasion, but otherwise did not work; her mother supported her. She was arrested at some point on bad check charges, but her mother paid the debt. At the time of the trial, Father was a full-time honor student at Middle Tennessee State University, residing with his father and sister. He admitted to two prior felony convictions for bad checks. Father, his father and his stepmother had previous encounters with the criminal justice system.

Following two days of testimony, the trial court granted the divorce to Father on the ground of Mother's inappropriate marital conduct. The court found the parties' "lack of a spirit of cooperation with each other, and a basic lack of respect each for the other as a parent of the minor child have contributed to the problems which they now suffer." Regarding custody of the child, the court found "the love, affection, and emotional ties are strong ...

with both parents, with the mother perhaps having the stronger ties with the child." The court found Father more stable and more disposed to provide materially for the child than Mother, and that continuity of placement favored the father. The court expressed reservations about the character and behavior of others who resided in or frequented the homes of both parties. The court was also concerned that both parties had used illegal drugs in the past, and that Mother's use had been recent enough to show up in the hair follicle test. The court found Mother to have shown "irresponsibility in her financial matters, her job status, her changes of residences, and her brushes with the criminal courts." The court observed a videotape introduced into evidence and found Father to have shown "a disparaging attitude toward [Mother] which is a negative factor in consideration of the custody issue."

The court remarked that the custody decision was a difficult one, but found that the best interest of the child was served by remaining in the custody of Father. Child support and restricted visitation were set for Mother. Mother appeals the custody determination.

## II.

Our courts make no more important decisions than those involving the custody of children. When called upon to order a custody arrangement, a court must consider many factors and make a custody determination based on the best interest of the child. *See* Tenn. Code Ann. § 36-6-106 (Supp. 1999). In child custody cases, the welfare and best interest of the child are the paramount concern, and the determination of the child's best interest must turn on the particular facts of each case. *See Akins v. Akins*, 805 S.W.2d 377, 378 (Tenn. Ct. App. 1990) (citing *Holloway v. Bradley*, 190 Tenn. 565, 570-

4

72, 230 S.W.2d 1003, 1006 (1950)). Where, as here, both parents seek custody, this court has held that the child's best interest is to be determined by using an analysis of the comparative fitness of each parent. *See Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983).

Because the determination of where a child's best interest lies is the result of the consideration of a number of factors in the context of a specific factual situation, *see Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997), it is particularly fact-driven. *See Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). Such decisions often hinge on the trial court's assessment of the demeanor and credibility of the parents and other witnesses. *See Adelsperger*, 970 S.W.2d at 485; *Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988). Consequently, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *See Rutherford v. Rutherford*, 971 S.W.2d 955, 956 (Tenn. Ct. App. 1997) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996)).

Accordingly, this court will decline to disturb the custody decision of the trial court herein unless that decision is based on a material error of law or the evidence preponderates against it. *See Adelsperger*, 970 S.W.2d at 485; *see also* Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984).

Both parents have factors weighing in their favor as well as factors weighing against them. Mother obviously loves her son, but the evidence does not preponderate against the trial court's finding that her irresponsibility with visitation and other matters, as well as the evidence of recent drug use, weigh heavily against her. Father is working hard to build a stable life for his

son and has provided such a home. Continuity and stability in the child's placement are important, and the award of custody to Father furthers those goals. Having reviewed the record, we cannot say that the evidence preponderates against the award of custody to Father.

## III.

However, we note with great concern the potential effect on the child of Father's extreme hostility toward Mother, evidenced at least in part by the videotape introduced into evidence. We believe the trial court charitably understated Father's actions by simply describing him as having a "disparaging attitude" toward Mother. Father is seen on the videotape telling the child, "Your mother lied again," calling Mother's friend a profane name, and on more than one occasion attempting to provoke Mother, even while the child was present.

The most perplexing act shown on the tape, however, was when Father showed the clock and noted that the time was 8:45 a.m., the latest time Mother should have picked up the child. Father and his father made a point of saying that Father had an exam at the university that day and would have to make other arrangements for child care. Seconds later, Mother was seen in the driveway. The doorbell rang at 8:46. Mother was turned away as the child screamed, "Mama, Mama." Father's need to punish Mother by imposing his rigid schedule upon her obviously outweighed his own inconvenience, Mother's right to visitation, and any concern for the child's desire to see Mother. These actions cause this Court great concern about Father's willingness to encourage a close relationship between his child and the boy's mother, which is clearly in the child's best interest.

The state legislature and our courts have spoken very strongly on the need for each parent to maintain a relationship with the child. *See, e.g., Wilson v. Wilson*, 987 S.W.2d 555, 564 (Tenn. Ct. App. 1999) (quoting *Pizzillo v. Pizzillo*, 884 S.W.2d 749, 755 (Tenn. Ct. App. 1994)) ("A child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and non-custodial parent."); *Griffin v. Stone*, 834 S.W.2d 300, 305 (Tenn. Ct. App. 1992) (each parent has an obligation to love, nurture and care for the children and the parties must cooperate for the good of the children); Tenn. Code Ann. § 36-6-106(10). Indeed, the state legislature has codified the expectation of a relationship with both parents. In Tenn. Code Ann. § 36-6-106(10) (Supp. 1999) the legislature listed the *willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent,* as a factor to be considered when awarding custody.

We understand that Mother is not blameless as to the hostilities. Thus, our cautionary remarks apply equally to Mother. We have addressed our admonitions primarily to Father, however, because of his greater access to and control over the child as the custodial parent.

IV.

For the reasons stated above, we affirm the order of the trial court. This case is remanded to the trial court for such further proceedings as may be necessary. Costs are taxed to the appellant.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE