IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# CHARLES DEWAYNE COLBAUGH v. BETH WARREN COLBAUGH

**An Appeal from the Chancery Court for Maury County**
**No. 98-595     Stella L. Hargrove, Judge**

---

**No. M1999-00755-COA-R3-CV - Filed August 25, 2000**

---

This is a post-divorce visitation case.  The mother and father lived with their infant child in Columbia, Tennessee.  After the couple separated, the mother took the parties' child to her hometown of Bowling Green, Kentucky, over one hundred miles from Columbia.  Upon the parties' divorce, the trial court awarded custody of the child to the mother and visitation to the father for twelve days each month, no greater than fourteen days apart.  The trial court ordered the mother and father to meet halfway between their two residences to exchange the child for the father's visitation.  The mother appealed the trial court's visitation schedule, arguing that it adversely affects the child's sense of stability, that it places overly burdensome travel requirements on the mother and the child, and that it is unworkable in this case because of the mother and father's inability to cooperate.  We affirm.

**Tenn.R.App.P. 3; Judgment of the Chancery Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Wayne Detring, Hendersonville, Tennessee, for the appellant, Beth Warren Colbaugh.

Barbara J. Walker, Columbia, Tennessee, for the appellee, Charles DeWayne Colbaugh.

## MEMORANDUM OPINION[1]

Defendant/Appellant Beth Warren Colbaugh ("Mother") and Plaintiff/Appellee Charles DeWayne Colbaugh ("Father") were married on December 20, 1997.  Mother and Father had one child during the marriage, Jonathan Douglas Colbaugh, born July 1, 1998.  Mother was pregnant

---

[1] Rule 10 (Rules of the Court of Appeals of Tennessee).  (b) **Memorandum Opinion**. The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

with Jonathan at the time of the parties' marriage. When the couple married, they agreed that Mother would remain in her hometown of Bowling Green, Kentucky, until after Jonathan was born. After Jonathan's birth, Mother moved with Father into a home the couple had purchased in Columbia, Tennessee. In August 1998, Mother and Father separated and Mother moved with Jonathan back to Kentucky.

During the marriage, Mother was the primary caregiver for Jonathan and did not work outside the home. At the time of trial, Mother worked part-time at a day care center in Kentucky and took Jonathan with her to work. Mother also attended Western Kentucky University, taking twelve semester hours at the time of trial. Father worked as a lineman for a local electric company. His work hours were from 8:00 a.m. until 4:30 p.m., Monday through Friday. Father was also on call every third weekend.

After Mother and Father separated, on September 21, 1998, Father filed a complaint for divorce alleging that Mother was guilty of inappropriate marital conduct or, in the alternative, that irreconcilable differences had arisen. On September 29, 1998, Mother filed an answer and counter-complaint for divorce. In her counter-complaint, Mother alleged that Father had committed acts of domestic violence against her during the parties' marriage. (R. at 5-6, Vol. 1) Mother attached to her counter-complaint a copy of a Kentucky court's domestic violence order citing Father's acts of domestic violence against Mother, granting Mother temporary custody of Jonathan, awarding Father visitation, and requiring Father to pay child support.[2] Father disputed the abuse. In the Tennessee trial court, both parents sought temporary and permanent custody of Jonathan.

On September 29, 1998, Mother filed a motion for temporary custody of Jonathan. Mother also requested that Father's visitation be supervised. On October 12, 1998, the trial court entered an order granting Mother temporary custody of the child and awarding Father visitation on alternating weekends. The trial court ordered the parties to meet halfway between Bowling Green, Kentucky, and Columbia, Tennessee, at a Shell convenience market located at the Briley Parkway exit of Interstate 40 in Nashville, Tennessee. The distance from Mother's residence in Bowling Green, Kentucky to Father's residence in Columbia, Tennessee is just over one hundred miles, and takes between one and one-half and two and one-half hours.

On October 1, 1999, the trial court entered a final decree of divorce. In the decree, the trial court awarded Mother custody of Jonathan and granted Father extensive visitation. The order stated that, in consideration of the distance between the parties' residences, Father "shall have visitation with the child twelve (12) days each month with his periods of visitation being no greater than fourteen (14) days apart. . . ." The trial court again ordered the parties to meet halfway between their two residences to exchange Jonathan for Father's visitation. From this order, Mother now appeals.

---

[2]The Kentucky order states that Kentucky "retains jurisdiction over any custody issues with child." However, no issue appears to have been raised with the Tennessee trial court or in this appeal regarding the jurisdiction of the Tennessee trial court.

On appeal, Mother argues that the trial court erred in setting the visitation schedule. She contends that the schedule effectively constitutes an award of joint custody because of the amount of time which Jonathan spends with Father. Mother asserts that the arrangement is unworkable in this case because of Mother and Father's inability to cooperate. Mother also asserts that the schedule places overly burdensome travel requirements on Mother and Jonathan and inhibits continuity and stability in the life of such a young child. She asserts that Jonathan will not be able to establish a permanent bond with Mother if he is with Mother for only the time afforded under the visitation schedule.

Father argues that the trial court's visitation schedule serves Jonathan's best interests. He contends that the schedule reflects an implicit finding by the trial court that Father poses no threat of harm to Jonathan and that Father is, in fact, a good parent. Father contends that the visitation arrangement allows Jonathan the opportunity to form a relationship with both parents.

In child custody and visitation cases, our review is *de novo* on the record with a presumption that the trial court's findings of fact are correct, unless the evidence preponderates against them. *See* Tenn.R.App.P. 13(d). In such cases, the welfare and best interest of the child are the primary concerns. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). Because the determination of where a child's best interest lies is the result of the consideration of a number of factors in the context of a specific factual situation, *see Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997), it is particularly fact-driven. *See Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). Such decisions often hinge on subtle factors, including the trial court's assessment of the parents' demeanor and credibility. *See Adelsperger*, 970 S.W.2d at 485.

In this case, there is no transcript of the proceedings below. The trial court approved a statement of the evidence. The statement of the evidence refers to no testimony, from Mother, Father, any family member, friend or expert, regarding the parents' inability to cooperate with respect to Jonathan, Jonathan's reaction to transfers between Mother and Father, any alleged violent behavior by Father in Jonathan's presence, Jonathan's relationship with either parent, or the effect on such a young child of the constant travel between households. On appeal, the appellant must present this Court with a record which includes evidence supporting the appellant's position. In the absence of a record which includes such evidence, we must presume that the evidence presented at trial supports the trial court's findings. *See Word v. Word*, 937 S.W.2d 931, 932 (Tenn. Ct. App. 1996) (quoting *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992)). Therefore, in this case, we must conclude that the evidence does not preponderate against the trial court's finding that the visitation schedule is in the child's best interest. Consequently, we affirm the trial court's visitation award.

The decision of the chancery court is affirmed. Costs are assessed against the Appellant, Beth Warren Colbaugh, and her surety, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, J.