# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
February 13, 2002 Session

## JAMIE LYNN FISH MASON v. CHARLES E. MASON, Jr.

**Appeal from the Chancery Court for Cocke County**
**No. 01-011  Thomas J. Seeley, Jr., Judge, Sitting by Designation**
**FILED JUNE 7, 2002**

**No. E2001-02208-COA-R3-CV**

This appeal from the Chancery Court of Cocke County questions whether the Trial Court erred in failing to grant Mr. Mason standard visitation with his minor son.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Denise Terry Stapleton, Morristown, Tennessee, for the Appellant, Charles E. Mason, Jr.

Jill R. Tally, Dandridge, Tennessee, and James R. Scroggins, Jefferson City, Tennessee for the Appellee, Jamie Fish Mason.

## OPINION

This is an appeal from a divorce between Jamie Lynn Fish Mason, the Appellee, and Charles E. Mason, Jr., the Appellant.  Mr. Mason appeals the decision of the Cocke County Chancery Court and presents for our review one issue which we restate:  whether the Trial Court erred in failing to grant Mr. Mason standard visitation with his minor child.

The parties were married on February 26, 2000 and one child was born of the marriage on October 21, 2000.[1]  Both Mr. and Ms. Mason have asserted that this was a stormy relationship prior to the marriage and continued to be so after the marriage.  Ms. Mason filed a Complaint for Divorce on March 2, 2001 wherein she alleged that Mr. Mason was guilty of inappropriate marital conduct, more specifically, that he was guilty of verbal and physical abuse.  Ms. Mason was seeking, *inter*

---

[1] Jackson McCaid Mason

*alia*, an absolute divorce, exclusive custody and control of the minor child, and child support.  Mr. Mason filed an Answer and Counter-Complaint alleging that Ms. Mason was guilty of inappropriate marital conduct and he, too, was seeking exclusive custody of the minor child.

An Agreed Order was entered into by the parties on April 24, 2001, pending the final hearing, whereby Ms. Mason was designated the primary residential parent for the minor child and Mr. Mason was granted shared parenting time with the child each Saturday from 1:00 P.M. until 7:00 P.M., and on each Wednesday from 1:00 P.M. until 7:00 P.M.

This matter was heard before the Trial Court on July 27, 2001.  Following testimony by the parties and several witnesses, the Trial Court stated in its Memorandum Opinion, the following:

> The truth has kind of been an illusive concept to some extent in this trial.  I know in my mind there's been a lot of lies that have been told from that witness stand.  I don't want to come down too much on either one of you.  I think there have been other people lied; I don't believe Mr. Burchette for one minute; he got on the stand and lied to protect his friend, Mr. Mason.
>
> I believe Mr. Mason has struck Ms. Mason on more than one occasion; I believe he pulled that chunk of her hair out of her, and I don't have much use for any man that hits a woman and I think you did, Mr. Mason. I think you may have done as a product of your drinking, and I still believe you have a drinking problem.
> . . .
>
> I mentioned Mr. Mason's drinking.  You know that story about what happened at the Outback and how he got there and I don't know if he was just trying to be vague, but he didn't remember really going to the Outback and he didn't know who drove to the Outback.  I guess then he remembered going to the Outback but he wasn't sure how he got there.
>
> I believe  that he did get thrown out of TGI Friday's, or whatever it is, in Pigeon Forge.
>
> I can tell you, Mr. Mason, that as a father and as a grandfather I'm going to protect your right to see Jackson, but it doesn't appear as if anybody down here wants to hear this case and I assume if there's problems in the future I'll come down and hear it and if your drinking continues to be a problem you run the risk of losing substantial time with Jackson.  If they prove to my satisfaction that you're ever under the influence around Jackson I'll take care of it.

With respect to custody and visitation, the Trial Court designated Ms. Mason the primary residential parent and granted Mr. Mason visitation as set forth in the Agreed Order, which is every Saturday and Wednesday from 1:00 P.M. until 7:00 P.M. Once the minor child reaches the age of sixteen months, visitation increases to Friday evening at 6:00 P.M. until Saturday evening at 6:00 P.M. each week in addition to the Wednesday evening visitation. When the child reaches the age of twenty-four months Mr. Mason will have every other weekend from Friday at 6:00 P.M. until Sunday at 6:00 P.M. and each Wednesday from 1:00 P.M. until 7:00 P.M. Once the child reaches thirty-six months, Mr. Mason will continue the aforementioned visitation plus three weeks in the summer. The Order further sets forth holiday visitation.

Mr. Mason argues that while he has had problems in the past with drug and alcohol abuse, violent behavior when intoxicated, and immaturity, these are all areas he has improved upon in the past few months. Mr. Mason contends that he has completed a drug and alcohol rehabilitation program and that he has passed several drug tests. Additionally, he will be receiving his college degree within a few months. He further asserts that Ms. Mason also has problems with drug and alcohol abuse, immaturity, and anger management. Mr. Mason argues that comparatively speaking, Ms. Mason is no more fit to raise the minor child than he is, and that there is no proof that allowing Mr. Mason to spend more time with his son will likely result in any harm. Finally, Mr. Mason asserts that Jackson is subject to harm by living with his mother and maternal grandfather, on a tomato farm that uses "toxic chemicals" in the production of tomatoes. Further, because the farm is situated along the Pigeon River, there is concern about the exposure of Jackson to the "dioxins." Mr. Mason argues that that is more reason to increase the amount of time the minor child spends with him.

Ms. Mason asserts that the Trial Court did not err in determining that she is the appropriate parent to have custody and that the record supports the visitation schedule as set forth in the Final Judgment.

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. *Gaskill v. Gaskill*, 936 S.W.2d 626, at 631 (Tenn. Ct. App. 1996); *D v. K*, 917 S.W.2d 682, 685 (Tenn.Ct.App.1995). Thus, we review the Trial Court's findings of fact *de novo* upon the record of the proceedings below, with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclusions of law, and those conclusions are reviewed *de novo*. *Jahn v. Jahn*, 932 S.W.2d 939 (Tenn. Ct. App. 1996).

Our courts as well as our legislature have recognized that non-custodial parents have a fundamental right to visit their children. However, that right is not absolute. The courts may restrict, suspend, or terminate visitation rights upon the presentation of clear and definite evidence that

permitting continued visitation will jeopardize the child physically or emotionally. T.C.A. 36-6-301 (2000); *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn.1988); *Helson v. Cyrus*, 989 S.W.2d 704, 707 (Tenn.Ct.App.1998); *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn.Ct.App.1996); *Weaver v. Weaver*, 261 S.W.2d 145, 148 (Tenn.1953).

The goal of custody and visitation decisions is to promote the child's best interests by placing him or her in an environment that will best serve his or her physical or emotional needs. *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn.1983). No hard and fast rules exist for determining which custody and visitation arrangement will serve a child's needs best. *Taylor v. Taylor*, 849 S.W.2d 319, at 327 (Tenn.1993); *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn.Ct.App.1983). The inquiry is factually driven and requires the courts to carefully weigh numerous considerations, including those identified in T.C.A. 36-6-106 (2001). *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn.1990); *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn.1988); *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (Tenn.1950).

Trial courts are normally in the best position to judge the credibility of the witnesses since they have seen and heard the witnesses testify. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). Thus, a trial court's determination of credibility is entitled to great weight in this court. *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn.1959); *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn.Ct.App.1993). In the case *sub judice*, Mr. and Ms. Mason each presented evidence that the other abused alcohol and drugs, behaved in an immature and inappropriate manner, and has trouble controlling anger. Ms. Mason accused Mr. Mason of having a history of domestic violence toward her, which Mr. Mason denied. Each party denied the allegations made by the other. The Trial Court, upon hearing the testimony put forth by both parties, chose to believe Ms. Mason rather than Mr. Mason. Based upon the record before this Court, we find that the evidence does not preponderate against the Trial Court's determinations.

The judgment of the Trial Court is affirmed and the cause remanded for collection of costs below which are, as are costs of appeal, adjudged against the Appellant, Charles E. Mason, Jr., and his surety, for which execution may issue if necessary.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE