# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

KELLIE M. HAYWOOD )
(ABERNATHY), )
)
    Plaintiff/Appellant, )  Appeal No.
) 01A01-9808-CH-00442
v. )
) Maury County Chancery
  PRESTON JIMMY HAYWOOD, ) No. 92-101
)
    Defendant/Appellee. )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR MAURY COUNTY

THE HONORABLE JAMES T. HAMILTON, PRESIDING

C. TIM TISHER
33 PUBLIC SQUARE
P.O. BOX 1952
COLUMBIA, TENNESSEE 38402

ATTORNEY FOR PLAINTIFF/APPELLANT

LAWRENCE D. SANDS
102 WEST 7TH STREET
P.O. BOX 1660
COLUMBIA, TENNESSEE 38402-1660

ATTORNEY FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P. J.
CAIN, J. (NOT PARTICIPATING)

# OPINION

This appeal involves the modification of a child custody order. The trial court changed the joint custody arrangement with the mother as primary custodian of the nine-year old girl, A.H., to sole custody with the father. The mother appeals the order changing custody, alleging it was made without an initial finding of an unanticipated change of circumstances. For the following reasons, we reverse the trial court's order.

## I.

Ms. Abernathy and Mr. Haywood, A.H.'s parents, divorced in 1992 when she was three years old. Ms. Abernathy remarried in 1993 and has another child from that marriage. In July 1997, Ms. Abernathy filed a Petition for Contempt (for failure to pay medical expenses) and for Increase in Child Support against Mr. Haywood. Six months later, Mr. Haywood filed his Petition for Custody. The petitions were heard together, and the court issued an order changing custody to the father, ordering the mother to pay child support, setting visitation for the mother, and ordering the father to reimburse the mother for the unpaid medical expenses.

## II.

Cases involving a request for change of custody of minor children are particularly fact driven. *See Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). An appellate court's review of a trial court's findings in a custody dispute is *de novo* on the record, accompanied by a presumption of correctness. *See Nichols v. Nichols*, 729 S.W.2d 713, 716 (Tenn. 1990); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). An appellate court will not reverse the trial court's decision unless it finds an error of law or that the evidence preponderates against

the trial court's findings. Tenn. R. App. P. 13(d); *See Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. App. 1995); *Hass*, 676 S.W.2d at 555.

Decisions in divorce cases regarding custody of children are extremely important. The trial court making the initial custody decision must attempt to set custody arrangements "that promote the best interest of the child, enhance the child's relationship with each parent, and interfere as little as possible with post-divorce family decision-making." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. App. 1997). No parent can be perfect and the trial court therefore must decide between imperfect custodians. *See Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. App. 1983); *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. App. 1973). Once that decision is made, however, custody should not be disturbed unless there is some change in circumstances that affects the welfare of the child. *See Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. App. 1991); *Adelsperger*, 970 S.W.2d at 485.

A decree awarding custody of children is *res judicata* "upon the facts in existence or reasonably foreseeable when the decision was made." *Adelsperger*, 970 S.W.2d at 485; *see also Long v. Long*, 488 S.W.2d 729, 731-732 (Tenn. App. 1972); *Hicks v. Hicks*, 26 Tenn. App. 641, 176 S.W.2d 371, 374-375 (1943).

Changes in a child's circumstances, however, may require modifying the existing custody and visitation arrangement. *Adelsperger*, 970 S.W.2d at 485*; see also* Tenn Code Ann. § 36-6-101(a)(1)(Supp. 1998) (courts are empowered to change custody "as the exigencies of the case may require"). There is no hard and fast rule as to what constitutes a change of circumstances. *See Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. App. 1983). However,

a custody order cannot be modified absent a showing of some new facts or "changed circumstances" affecting the physical, mental, or emotional welfare of the child which require an alteration of the existing order. *See Adelsperger*, 970 S.W.2d at 485; *Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. App. 1996).

Only if the court first finds that a material change of circumstances has occurred may the court proceed to determine whether the best interests of the child dictate a change in the existing custody arrangement and to devise a custody arrangement that serves those interests. *See Adelsperger*, 970 S.W.2d at 485.

In summary, the party seeking to change custody must show "(1) that the child's circumstances have materially changed in a way that could not have reasonably been foreseen at the time of the original custody decision, and (2) that the child's best interest will be served by changing the existing custody arrangement." *Adelsperger*, 970 S.W.2d at 485.

### III.

Testimony showed that A.H. had some academic problems in school. As early as kindergarten, teachers remarked on her lack of concentration. In 1996, just before second grade, Ms. Abernathy took A.H., at the teacher's suggestion, to a school psychologist to be tested. Both parties testified that the psychologist recommended tutoring rather than medication. After trying the tutoring for a while, Ms. Abernathy took the child to another mental health professional for re-evaluation, again at the teacher's suggestion. After the second evaluation, A.H. began taking Ritalin. Ms. Abernathy testified that she was initially reluctant to use the medication, but after researching Ritalin, felt it would help the child. She administers it sparingly. Mr. Haywood preferred not

to allow A.H. to use Ritalin, claiming that it affected her personality and asserting his desire to "keep kids off drugs." A.H.'s teacher and her stepfather testified that A.H. learned better when she was taking the Ritalin and that her performance in school improved.

In the second grade, it became clear that A.H.'s reading skills were inadequate for promotion to the third grade. Both parents and the step-father met with the teacher to discuss whether A.H. would be retained or promoted to the third grade.[1] Mr. Haywood preferred that A.H. be promoted, and offered to keep her over the summer and work with her. Ms. Abernathy agreed to let him keep A.H., but only if he met certain conditions, including providing a trained tutor,[2] finding adequate day care, and getting a job. Mr. Haywood balked at the conditions, so Ms. Abernathy kept A.H. for the summer and provided a tutor. A.H. entered the third grade in 1997, but had to return to second grade early in the year. A.H. did very well in second grade the second time.

Ms. Abernathy separated from her second husband in February 1998 while her Petition for Contempt and for Increase in Child Support against Mr. Haywood was pending.[3] After the separation, Mr. Abernathy, the second husband, approached Mr. Haywood and asked if he "knew all of the truth" about an incident involving A.H. nearly five years earlier.

In September 1993, A.H. was four years old and staying with the relative of a friend of Ms. Abernathy's during the day. Ms. Abernathy's

---

[1] That meeting was Mr. Haywood's only visit to A.H.'s school other than a kindergarten graduation.

[2] A.H.'s teacher testified it was important to have a certified teacher working with A.H.

[3] At the time of trial, Ms. Abernathy was involved in a bitter divorce from her second husband. Ms. Abernathy was in the unenviable position of having her current estranged husband and her ex-husband become friends and join forces against her. Mr. Abernathy testified as a witness for Mr. Haywood.

testimony indicated that while A.H. was preparing for her bath and Mr. Abernathy was eating supper, A.H. mentioned to her mother that a three year old boy at her daycare had "touched" her. Ms. Abernathy examined her daughter, called the sitter, and took the child to a doctor the next day. The doctor's records, not introduced into evidence but read by Ms. Abernathy from the witness stand, indicated no tears or penetration. The report indicated "possible sexual experimentation, doubt abuse." Ms. Abernathy never left A.H. with that sitter again. She testified that she called A.H.'s father the night she learned of the incident and explained the situation to him.

According to Mr. Abernathy's testimony, A.H. told him that not one, but three, boys touched her that day. He confirmed that Ms. Abernathy called the sitter and took A.H. to the doctor the next day.

Ms. Abernathy testified that she still sees her friend and that A.H. has been around the boys a few times, but A.H. has never been alone with them. No testimony indicated that a similar "experimentation" incident had occurred in the past five years. Significantly, the record contains no evidence any signs of sexual abuse ever existed.

The trial court made only two findings of fact: 1) that the child was "sexually abused" by some young boys five years ago and is still in contact with the boys; and 2) that the child has had some problems at school and takes Ritalin. The court then reached the conclusion that "it would be in the best interest of this child for her custody to be placed with her father."

We find that the evidence preponderates against the trial court's first finding and that the second finding, under the circumstances of this case, does not establish a material change of circumstances. The first finding, as described

in the record, relates, at most, to an isolated event of experimentation. Upon learning of the event, the mother took immediate steps by taking A.H. to the doctor and by discontinuing her child care arrangements. An isolated incident occurring while the child was in day care does not establish a change of circumstances, especially where the parent took immediate remedial action.

Similarly, the mother sought help for her daughter's learning difficulties, did research herself, and followed the advice of a professional in giving her child medication. It is foreseeable that the parent of a child with difficulties will seek appropriate professional help and will seriously consider the advice given. Following such advice, especially after independent research and in the careful way Ms. Abernathy did, does not constitute a material change of circumstances.

IV.

Since no material change of circumstances was shown, there is no basis for proceeding to a best interest analysis. However, since the trial court implicitly found a change of circumstances, it may have considered its factual findings relevant to the question of which custody arrangement would best serve the child's interests.

To the extent the trial court's comments regarding Ritalin imply a finding relative to the best interest analysis rather than the issue of whether a change of circumstances has occurred, we cannot conclude that a parent's decision to give her child medication recommended by professionals is contrary to the child's best interest. In the instant case, the testimony indicates the Ritalin has helped A.H. with her school performance.

Testimony showed that both parents were involved in A.H.'s life. Mr.

Haywood saw her regularly, even turning down work if it took him out of town during his scheduled visitation. He told of taking her swimming, to the zoo, to the movies, to his parents's farm, and to the pet store to play with the puppies. Ms. Abernathy acknowledged that her daughter loved her father and thought he was "the best thing since sliced bread."

Ms. Abernathy was also very involved in A.H.'s life. She was at home when the child returned from school. She spent at least an hour every night helping A.H. with her homework and additional time working with flash cards. Testimony from Mr. Haywood and A.H.'s second grade teacher confirmed Ms. Abernathy's hard work in helping the girl with her homework and arranging tutors for her. The teacher testified that Ms. Abernathy frequently consulted her about the child's progress and was involved in school activities.

Although the trial court made no mention of the child's preference in the order awarding custody to Mr. Haywood, the transcript contains references to A.H.'s desire to live with her father. The relevant statute provides:

> ... in any proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following ... The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children.

Tenn. Code Ann. § 36-6-106(7) (Supp. 1998).

Thus, while the court may hear a young child's preference as to custody, it is only one of several factors to be considered in determining the best interest of that child. *See Hardin v. Hardin*, 979 S.W.2d 314, 317 (Tenn.

App. 1998), *Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. App. 1995).

Absent a material change of circumstances, a modification of a previous custody award cannot be granted. Thus, it would be inappropriate for this court to proceed to analyze whether the custody arrangement ordered by the trial court serves the child's best interest. However, having reviewed the record in this case, we find no evidence justifying a conclusion that continuing the prior custody arrangement was contrary to A.H.'s best interest.

V.

The trial court's findings of fact do not support either a finding of material change of circumstances or a conclusion that A.H.'s best interest would be served by the custody modification ordered. The record supports neither.

Therefore, we reverse the order of the trial court. This case is remanded to the trial court for whatever further proceedings may be necessary. Costs of this appeal are assessed to the appellee.


_____
PATRICIA J. COTTRELL, J.

CONCUR:


_____
BEN H. CANTRELL, P. J., M.S.